# OHIO CIVIL RIGHTS COMMISSION ET AL. *v.* DAYTON CHRISTIAN SCHOOLS, INC., ET AL.

No. 85–488.   Argued March 26, 1986—Decided June 27, 1986

REHNQUIST, J., delivered the opinion of the Court, in which BURGER, C. J., and WHITE, POWELL, and O'CONNOR, JJ., joined. STEVENS, J., filed an opinion concurring in the judgment, in which BRENNAN, MARSHALL, and BLACKMUN, JJ., joined, *post*, p. 629.

*Kathleen McManus* argued the cause for appellants. With her on the briefs were *Anthony J. Celebrezze, Jr.*, Attorney General of Ohio, and *Helen M. Ninos*, Assistant Attorney General.

*William Bentley Ball* argued the cause for appellees. With him on the brief were *Philip J. Murren, Sandra E. Wise,* and *Bruce E. Pence.*\*

JUSTICE REHNQUIST delivered the opinion of the Court.

Appellee Dayton Christian Schools, Inc. (Dayton), and various individuals brought an action in the United States District Court for the Southern District of Ohio under 42 U. S. C. § 1983, seeking to enjoin a pending state administrative proceeding brought against Dayton by appellant Ohio Civil Rights Commission (Commission). Dayton asserted that the Free Exercise and Establishment Clauses of the First Amendment prohibited the Commission from exercising jurisdiction over it or from punishing it for engaging in employment discrimination. The District Court refused to

---

\**Joan E. Bertin, George Kannar, Charles S. Sims, Isabelle Katz Pinzler,* and *Burt Neuborne* filed a brief for the American Civil Liberties Union et al. as *amici curiae* urging reversal.

Briefs of *amici curiae* urging affirmance were filed for the American Jewish Committee et al. by *Kimberlee Wood Colby, Samuel E. Ericsson, Michael J. Woodruff, Samuel Rabinove,* and *Richard T. Foltin;* for Americans United for Separation of Church and State by *Lee Boothby* and *Robert A. Yingst;* for the Associated Christiàn Conciliation Services by *John D. Robb;* for the Catholic Conference of Ohio by *David J. Young;* for Concerned Women of America by *Diane E. White, Joy R. Powell,* and *Jordan W. Lorence;* for the Council on Religious Freedom by *Lee Boothby* and *Rolland Truman;* for the General Conference of Seventh-day Adventists by *Walter E. Carson* and *Warren L. Johns;* for the Gulf & Great Plains Legal Foundation by *Jerald L. Hill* and *Mark J. Bredemeier;* for the National Jewish Commission on Law and Public Affairs ("COLPA") by *Daniel D. Chazin, Nathan Lewin,* and *Dennis Rapps;* for the Rutherford Institute et al. by *W. Charles Bundren, Guy O. Farley, Jr., John W. Whitehead, D. Kevin Ikenberry, Thomas O. Kotouc, Alfred Lindh, William B. Hollberg,* and *Wendell R. Bird;* and for the United States Catholic Conference by *Wilfred R. Caron* and *Mark E. Chopko.*

Briefs of *amici curiae* were filed for the American Jewish Congress by *Marc D. Stern* and *Ronald A. Krauss;* and for the Catholic League for Religious and Civil Rights et al. by *Steven Frederick McDowell.*

issue the injunction on grounds that any conflict between the First Amendment and the administrative proceedings was not yet ripe, and that in any case the proposed action of the Commission violated neither the Free Exercise Clause nor the Establishment Clause of the First Amendment, as made applicable to the States by the Fourteenth Amendment. The Court of Appeals for the Sixth Circuit reversed, holding that the exercise of jurisdiction and the enforcement of the statute would impermissibly burden appellees' rights under the Free Exercise Clause and would result in excessive entanglement under the Establishment Clause. We postponed the question of jurisdiction pending consideration of the merits. 474 U. S. 978 (1985). We now conclude that we have jurisdiction, and we reverse, holding that the District Court should have abstained under our cases beginning with *Younger* v. *Harris*, 401 U. S. 37 (1971).

Dayton is a private nonprofit corporation that provides education at both the elementary and secondary school levels. It was formed by two local churches, the Patterson Park Brethren Church and the Christian Tabernacle, and it is regarded as a "nondenominational" extension of the Christian education ministries of these two churches. Dayton's corporate charter establishes a board of directors (board) to lead the corporation in both spiritual and temporal matters. App. 11. The charter also includes a section entitled "Statement of Faith," which serves to restrict membership on the board and the educational staff to persons who subscribe to a particular set of religious beliefs. The Statement of Faith requires each board or staff member to be a born-again Christian and to reaffirm his or her belief annually in the Bible, the Trinity, the nature and mission of Jesus Christ, the doctrine of original sin, the role of the Holy Ghost, the resurrection and judgment of the dead, the need for Christian unity, and the divine creation of human beings. *Id.*, at 5–6.

The board has elaborated these requirements to include a belief in the internal resolution of disputes through the "Bib-

lical chain of command." The core of this doctrine, rooted in passages from the New Testament, is that one Christian should not take another Christian into courts of the State. Teachers are expected to present any grievance they may have to their immediate supervisor, and to acquiesce in the final authority of the board, rather than to pursue a remedy in civil court. The board has sought to ensure compliance with this internal dispute resolution doctrine by making it a contractual condition of employment.

Linda Hoskinson was employed as a teacher at Dayton during the 1978–1979 school year. She subscribed to the Statement of Faith and expressly agreed to resolve disputes internally through the Biblical chain of command. In January 1979, she informed her principal, James Rakestraw, that she was pregnant. After consulting with his superiors, Rakestraw informed Hoskinson that her employment contract would not be renewed at the end of the school year because of Dayton's religious doctrine that mothers should stay home with their preschool age children. Instead of appealing this decision internally, Hoskinson contacted an attorney who sent a letter to Dayton's superintendent, Claude Schindler, threatening litigation based on state and federal sex discrimination laws if Dayton did not agree to rehire Hoskinson for the coming school year.

Upon receipt of this letter, Schindler informed Hoskinson that she was suspended immediately for challenging the nonrenewal decision in a manner inconsistent with the internal dispute resolution doctrine. The board reviewed this decision and decided to terminate Hoskinson. It stated that the sole reason for her termination was her violation of the internal dispute resolution doctrine, and it rescinded the earlier nonrenewal decision because it said that she had not received adequate prior notice of the doctrine concerning a mother's duty to stay home with her young children.

Hoskinson filed a complaint with appellant Ohio Civil Rights Commission (Commission), alleging that Dayton's

nonrenewal decision constituted sex discrimination, in violation of Ohio Rev. Code Ann. § 4112.02(A) (Supp. 1985), and that its termination decision penalized her for asserting her rights, in violation of Ohio Rev. Code Ann. § 4112.02(I) (Supp. 1985). The Commission notified Dayton that it was conducting a preliminary investigation into the matter, and repeatedly urged Dayton to consider private settlement, warning that failure to do so could result in a formal adjudication of the matter.

The Commission eventually determined that there was probable cause to believe that Dayton had discriminated against Hoskinson based on her sex and had retaliated against her for attempting to assert her rights in violation of §§ 4112(A) and (I). Pursuant to Ohio Rev. Code Ann. § 4112.05(B) (Supp. 1985), it sent Dayton a proposed Conciliation Agreement and Consent Order that would have required Dayton to reinstate Hoskinson with backpay, and would have prohibited Dayton from taking retaliatory action against any employee for participating in the preliminary investigation. The Commission warned Dayton that failure to accede to this proposal or an acceptable counteroffer would result in formal administrative proceedings being initiated against it. When Dayton failed to respond, the Commission initiated administrative proceedings against it by filing a complaint. Dayton answered the complaint by asserting that the First Amendment prevented the Commission from exercising jurisdiction over it since its actions had been taken pursuant to sincerely held religious beliefs. App. 103.

While these administrative proceedings were pending, Dayton filed this action against the Commission in the United States District Court for the Southern District of Ohio under 42 U. S. C. § 1983, seeking a permanent injunction against the state proceedings on the ground that any investigation of Dayton's hiring process or any imposition of sanctions for Dayton's nonrenewal or termination decisions would violate

the Religion Clauses of the First Amendment. App. 118–120. The Commission filed a motion to dismiss, arguing, *inter alia*, that the District Court should refrain from enjoining the administrative proceedings based on federal abstention doctrines. Record, Doc. No. 9, pp. 7–8. It also filed various documents defending its action on the merits.

Without addressing the abstention argument, the District Court refused to issue the injunction. 578 F. Supp. 1004 (1984). The Court of Appeals for the Sixth Circuit reversed, as previously noted, holding that the exercise of such jurisdiction would violate both the Free Exercise Clause and the Establishment Clause of the First Amendment. 766 F. 2d 932 (1985).

We hold that we have appellate jurisdiction under 28 U. S. C. § 1254(2) to review the decision of the Court of Appeals. That statute authorizes an appeal to this Court "by a party relying on a State statute held by a court of appeals to be invalid as repugnant to the Constitution." This authority embraces cases holding a state statute unconstitutional as applied to the facts of the case. *Dutton* v. *Evans*, 400 U. S. 74, 76, n. 6 (1970). Here there is no doubt that the decision by the Court of Appeals satisfies this test. The court expressly held that Ohio Rev. Code Ann. § 4112.02 *et seq.* (Supp. 1985) is repugnant to the Free Exercise and Establishment Clauses as applied to authorize the administrative body to investigate the charges against Dayton and to decide whether to impose sanctions. See 766 F. 2d, at 935, n. 5, 944, 955, 961.

Having taken jurisdiction over the decision below, we now turn to whether the District Court should have exercised jurisdiction over the case itself. We conclude that the District Court should have abstained from adjudicating this case under *Younger* v. *Harris*, 401 U. S. 37 (1971), and later cases.[1] The Commission urged such abstention in the Dis-

---

[1] We think that any ripeness challenge to appellees' complaint is foreclosed by *Steffel* v. *Thompson*, 415 U. S. 452 (1974), and *Doran* v. *Salem*

trict Court, and on oral argument here. Tr. of Oral Arg. 7–8. Dayton has filed a postargument brief urging that the Commission has waived any claim to abstention because it had stipulated in the District Court that that court had jurisdiction of the action. We think, however, that this argument misconceives the nature of *Younger* abstention. It does not arise from lack of jurisdiction in the District Court, but from strong policies counseling against the exercise of such jurisdiction where particular kinds of state proceedings have already been commenced. A State may of course voluntarily submit to federal jurisdiction even though it might have had a tenable claim for abstention. See *Brown* v. *Hotel Employees*, 468 U. S. 491, 500, n. 9 (1984); *Ohio Bureau of Employment Services* v. *Hodory*, 431 U. S. 471, 479–480 (1977); *Sosna* v. *Iowa*, 419 U. S. 393, 396–397, n. 3 (1975). But in each of these cases the State expressly urged this Court or the District Court to proceed to an adjudication of the constitutional merits. We think there was no similar consent or waiver here, and we therefore address the issue of whether the District Court should have abstained from deciding the case.

In *Younger* v. *Harris, supra,* we held that a federal court should not enjoin a pending state criminal proceeding except in the very unusual situation that an injunction is necessary to prevent great and immediate irreparable injury. We justified our decision both on equitable principles, *id.*, at 43, and on the "more vital consideration" of the proper respect for the fundamental role of States in our federal system. *Id.*, at

*Inn, Inc.,* 422 U. S. 922 (1975). *Steffel* held that a reasonable threat of prosecution for conduct allegedly protected by the Constitution gives rise to a sufficiently ripe controversy. 415 U. S., at 458–460. If a reasonable threat of prosecution creates a ripe controversy, we fail to see how the actual filing of the administrative action threatening sanctions in this case does not. It is true that the administrative body may rule completely or partially in appellees' favor; but it was equally true that the plaintiffs in *Steffel* and *Doran* may have prevailed had they in fact been prosecuted.

44. Because of our concerns for comity and federalism, we thought that it was

> "perfectly natural for our cases to repeat time and time again that the *normal* thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions." *Id.*, at 45 (emphasis added).

We have since recognized that our concern for comity and federalism is equally applicable to certain other pending state proceedings. We have applied the *Younger* principle to civil proceedings in which important state interests are involved. *Huffman* v. *Pursue, Ltd.*, 420 U. S. 592 (1975); *Juidice* v. *Vail*, 430 U. S. 327 (1977); *Trainor* v. *Hernandez*, 431 U. S. 434 (1977); *Moore* v. *Sims*, 442 U. S. 415, 423 (1979). We have also applied it to state administrative proceedings in which important state interests are vindicated, so long as in the course of those proceedings the federal plaintiff would have a full and fair opportunity to litigate his constitutional claim. We stated in *Gibson* v. *Berryhill*, 411 U. S. 564, 576–577 (1973), that "administrative proceedings looking toward the revocation of a license to practice medicine may in proper circumstances command the respect due court proceedings." Similarly, we have held that federal courts should refrain from enjoining lawyer disciplinary proceedings initiated by state ethics committees if the proceedings are within the appellate jurisdiction of the appropriate State Supreme Court. *Middlesex County Ethics Committee* v. *Garden State Bar Assn.*, 457 U. S. 423 (1982). Because we found that the administrative proceedings in *Middlesex* were "judicial in nature" from the outset, *id.*, at 432–434, it was not essential to the decision that they had progressed to state-court review by the time we heard the federal injunction case.[2]

---

[2] The lower courts have been virtually uniform in holding that the *Younger* principle applies to pending state administrative proceedings in which an important state interest is involved. See, *e. g., Williams* v. *Red*

We think the principles enunciated in these cases govern the present one. We have no doubt that the elimination of prohibited sex discrimination is a sufficiently important state interest to bring the present case within the ambit of the cited authorities. We also have no reason to doubt that Dayton will receive an adequate opportunity to raise its constitutional claims. Dayton contends that the mere exercise of jurisdiction over it by the state administrative body violates its First Amendment rights. But we have repeatedly rejected the argument that a constitutional attack on state procedures themselves "automatically vitiates the adequacy of those procedures for purposes of the *Younger-Huffman* line of cases." *Moore, supra,* at 427, n. 10. Even religious schools cannot claim to be wholly free from some state regulation. *Wisconsin* v. *Yoder,* 406 U. S. 205, 213 (1972). We therefore think that however Dayton's constitutional claim should be decided on the merits, the Commission violates no constitutional rights by merely investigating the circumstances of Hoskinson's discharge in this case, if only to ascertain whether the ascribed religious-based reason was in fact the reason for the discharge.

---

*Bank Board of Education,* 662 F. 2d 1008 (CA3 1981); *Grandco Corp.* v. *Rochford,* 536 F. 2d 197, 206 (CA7 1976); *McCune* v. *Frank,* 521 F. 2d 1152, 1158 (CA2 1975); *McDonald* v. *Metro-North Commuter Railroad Division of Metropolitan Transit Authority,* 565 F. Supp. 37 (SDNY 1983) (Weinfeld, J.). Only the recent case of *Martori Bros. Distributors* v. *James-Massengale,* 781 F. 2d 1349, 1354 (CA9 1986), departs from this position, and it does so without analysis. Of course, if state law expressly indicates that the administrative proceedings are not even "judicial in nature," abstention may not be appropriate. See *Hawaii Housing Authority* v. *Midkiff,* 467 U. S. 229, 237–239 (1984).

The application of the *Younger* principle to pending state administrative proceedings is fully consistent with *Patsy* v. *Florida Board of Regents,* 457 U. S. 496 (1982), which holds that litigants need not exhaust their administrative remedies prior to bringing a § 1983 suit in federal court. Cf. *Huffman* v. *Pursue, Ltd.,* 420 U. S. 592, 607–611 (1975). Unlike *Patsy,* the administrative proceedings here are coercive rather than remedial, began before any substantial advancement in the federal action took place, and involve an important state interest.

Dayton also contends that the administrative proceedings do not afford the opportunity to level constitutional challenges against the potential sanctions for the alleged sex discrimination. In its reply brief in this Court, the Commission cites several rulings to demonstrate that religious justifications for otherwise illegal conduct are considered by it. See, e. g., *In re St. Mary of the Falls*, No. 948 (1975). Dayton in turn relies on a decision of the Supreme Court of Ohio, *Mobil Oil Corp.* v. *Rocky River*, 38 Ohio St. 2d 23, 26, 309 N. E. 2d 900, 902 (1974), in which that court held that a local zoning commission could not consider constitutional claims. But even if Ohio law is such that the Commission may not consider the constitutionality of the statute under which it operates, it would seem an unusual doctrine, and one not supported by the cited case, to say that the Commission could not construe its own statutory mandate in the light of federal constitutional principles. Cf. *NLRB* v. *Catholic Bishop of Chicago*, 440 U. S. 490 (1979). In any event, it is sufficient under *Middlesex, supra*, at 436, that constitutional claims may be raised in state-court judicial review of the administrative proceeding. Section 4112.06 of Ohio Rev. Code Ann. (1980) provides that any "respondent claiming to be aggrieved by a final order of the commission . . . may obtain judicial review thereof." Dayton cites us to no Ohio authority indicating that this provision does not authorize judicial review of claims that agency action violates the United States Constitution.

The judgment of the Court of Appeals is therefore reversed, and the case remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE STEVENS, with whom JUSTICE BRENNAN, JUSTICE MARSHALL, and JUSTICE BLACKMUN join, concurring in the judgment.

Appellee Dayton Christian Schools, Inc. (School), employed Mrs. Linda Hoskinson as a teacher. Shortly after

learning that she was pregnant, the School refused to renew Mrs. Hoskinson's teaching contract for the next academic year. The two reasons for this decision, according to the School, were (1) the School's belief that Mrs. Hoskinson should remain at home to supervise and care for her forth-coming child; and (2) the School's belief that Mrs. Hoskinson had violated the "Biblical chain of command" by consulting an attorney regarding her disagreement with the School's con-viction that she remain at home. App. 115 (complaint of Dayton Christian Schools, Inc., et al.).

After her termination, Mrs. Hoskinson filed a sex dis-crimination charge against the School with appellant Ohio Civil Rights Commission. The Commission investigated her charge and, upon finding probable cause to believe that the School had violated § 4112.02 of the Ohio Revised Code,[1] scheduled a hearing. The School thereupon filed this action in Federal District Court seeking declaratory and injunctive relief.

In the District Court, the School argued that the Ohio anti-discrimination statute violates the First Amendment Reli-gion Clauses as applied to sectarian schools.[2] The District Court determined that "[t]he only conduct on the part of the Commission that is presently being threatened with suffi-

---

[1] That section provides, in part:

"§ 4112.02 Unlawful discriminatory practices.

"It shall be an unlawful discriminatory practice:

"(A) For any employer, because of the race, color, religion, sex, national origin, handicap, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employ-ment, or any matter directly or indirectly related to employment." Ohio Rev. Code Ann. § 4112.02 (Supp. 1985).

[2] The School also argued that § 4112.02 of the Ohio Revised Code is un-constitutional on its face. The District Court held the section to be neither overbroad nor void for vagueness. Because the Court of Appeals invali-dated the section as applied to the School, it did not address appellees' fa-cial attack. The School no longer presses the argument that the statute is unconstitutional on its face.

cient immediacy and reality to present a justiciable controversy is the investigation, which has already taken place, and the pending hearing on the complaint filed by the [Commission] concerning the discharge of Mrs. Hoskinson." 578 F. Supp. 1004, 1029 (SD Ohio 1984). Accord, *id.*, at 1039. On the merits, the District Court concluded that the Commission's investigation and adjudication of sex discrimination charges was constitutional. The court recognized that "the statute *could* be applied in any number of ways that could impermissibly interfere with" appellees' religious freedom, but it concluded that these concerns —which relate to the possible remedies that might or might not be ordered if a violation is found—were "hypothetical or speculative" and therefore not ripe on the current state of the record. *Id.*, at 1028.[3]

The Court of Appeals reversed. 766 F. 2d 932 (CA6 1985). It recognized that the School "challenge[d] only the [Commission's] exercise of jurisdiction and its issuance of the complaint in this case." *Id.*, at 950, n. 31. It further acknowledged that "an order of reinstatement or backpay is not at issue in this case." *Ibid.* It nevertheless determined that the "chilling knowledge" that the School's selection criteria for teachers "will be reevaluated, and, perhaps, adjusted by the state applying secular criteria" placed an impermissible burden on appellees' religious freedoms. *Ibid.* Looking into the future, the Court of Appeals also concluded that the

---

[3] "In permitting the [Commission] to exercise jurisdiction over the instant controversy, the Court has in no way determined either that the full force of [the Commission's] jurisdiction under [Ohio Revised Code] Chapter 4112 can be brought to bear on [Dayton Christian Schools] without impermissibly burdening [appellees'] first amendment rights or, even with respect to the present controversy, that any remedy deemed appropriate by the [Commission] should they find [Dayton Christian Schools] liable, would necessarily present no further first amendment problems. However, because many of the concerns voiced by [appellees] about state encroachment on their religious freedoms remain as yet only possibilities, they cannot serve as the basis for the issuing of a permanent injunction against the [Commission]." 578 F. Supp., at 1041.

"highly intrusive nature" of backpay and reinstatement, as well as the "continuing surveillance implicated by the conciliation agreement proposed by the Commission" and rejected by the School, "reveal the 'significant risk that the First Amendment will be infringed.'" *Id.*, at 942–943 (quoting *NLRB* v. *Catholic Bishop of Chicago,* 440 U. S. 490, 502 (1979)).   Accord, 766 F. 2d, at 951.

Like the majority, I agree with the District Court that neither the investigation of certain charges nor the conduct of a hearing on those charges is prohibited by the First Amendment: "the Commission violates no constitutional rights by merely investigating the circumstances of Hoskinson's discharge in this case, if only to ascertain whether the ascribed religious-based reason was in fact the reason for the discharge."   *Ante,* at 628.

I further agree with the District Court that any challenge to a possibly intrusive remedy is premature at this juncture. As the majority points out, *ante,* at 629, the Commission recognizes religious justifications for conduct that might otherwise be illegal.   Thus, although § 4112.02 forbids discrimination on the basis of religion, the Commission has dismissed complaints alleging religious discrimination by religious educational institutions, see *Menz* v. *St. Pius School,* No. 3823 (1983), and in particular has dismissed complaints by teachers against sectarian schools for limiting employment to instructors who subscribe to the appropriate faith, see *In re St. Michael's School,* No. 2726 (1976); *In re St. Mary of the Falls,* No. 948 (1975).   It bears emphasis that the Commission dismissed these complaints only *after* investigating charges of discrimination, finding probable cause that the statute had been violated, and holding a hearing on the complaint.   It therefore follows that the Commission's finding of probable cause and decision to schedule a hearing in this case does not also mean that the Commission intends to impose *any* sanction, let alone a sanction in derogation of the First Amendment's Religion Clauses.   In view of this fact, the District

Court was entirely correct in concluding that appellees' constitutional challenge to the remedial provisions of the Ohio statute is not ripe for review.[4]   Accordingly, I concur in the judgment.[5]

---

[4] I fully agree with the majority's general statement that "a reasonable threat of prosecution for conduct allegedly protected by the Constitution gives rise to a sufficiently ripe controversy." *Ante*, at 626, n. 1 (citation omitted).   Thus, when the constitutional challenge is to the arrest and initiation of criminal proceedings — as was the case with the pamphleteer in *Steffel* v. *Thompson*, 415 U. S. 452, 458–460 (1974), and the operators of the bars in *Doran* v. *Salem Inn, Inc.*, 422 U. S. 922, 930–931 (1975) — a "reasonable threat" of arrest and prosecution is sufficient to make the controversy ripe for judicial review.   For purposes of this case, it follows from *Steffel* and *Doran* that appellees' First Amendment challenge to the Commission's decision to investigate and adjudicate a charge of sex discrimination against the School is ripe, because the investigation has been completed and the matter set for hearing.

However, it does not follow that a challenge to whatever *remedy* might ultimately be fashioned (should liability be established and relief ordered) is ripe merely upon a showing of a "reasonable threat" that proceedings will commence.   *Doran* and *Steffel* do not suggest this result, for they did not address the constitutionality of possible remedies for the conduct prosecuted in those cases.   In view of the absence of any finding of liability in this case, and the Commission's demonstrated willingness to tailor remedies to accommodate the exercise of religious freedoms, there is plainly no "reasonable threat" that an overly intrusive remedy will trench on appellees' First Amendment rights.   To hold otherwise would require the District Court to detail the constitutionally permissible range of the Commission's sentencing discretion in advance of any facts regarding the School's discriminatory conduct or any explanation by the Commission justifying the relief it might fashion.   Either or both of these items of information would inform the First Amendment analysis and might prove decisive in determining the constitutionality of the Commission's hypothesized remedy.

[5] I do not agree with the majority that the doctrine of abstention associated with *Younger* v. *Harris*, 401 U. S. 37 (1971), required the District Court to dismiss appellees' complaint.   That disposition would presumably deny the School a federal forum to adjudicate the constitutionality of a provisional administrative remedy, such as reinstatement pending resolution of the complainant's charges, even though the constitutional issues have become ripe for review by the Commission's entry of a coercive order and

the Commission refuses to address the merits of the constitutional claims. *Younger* abstention has never been applied to subject a federal-court plaintiff to an allegedly unconstitutional state administrative order when the constitutional challenge to that order can be asserted, if at all, only in state-court judicial review of the administrative proceeding. See *Steffel* v. *Thompson*, 415 U. S., at 462 (holding that *Younger* abstention is inappropriate when no state-court proceeding "is pending at the time the federal complaint is filed," because in that circumstance "federal intervention does not result in duplicative legal proceedings or disruption of the state criminal justice system"; it cannot "be interpreted as reflecting negatively upon [a] state court's ability to enforce constitutional principles"; and the absence of a pending state-court proceeding deprives "the federal plaintiff [of] a concrete opportunity to vindicate his constitutional rights"). See also *Middlesex County Ethics Committee* v. *Garden State Bar Assn.*, 457 U. S. 423, 437 (1982) (requiring abstention where "an adequate state forum for all relevant issues has clearly been demonstrated to be available prior to any proceedings on the merits in federal court" (citation omitted)).