**JOHN E. REID AND ASSOCIATES, INC., an Illinois corporation,**
**Plaintiff,**

v.

**The ILLINOIS HUMAN RIGHTS COMMISSION, Manuel Barbosa, Mervin N. Bachman, Wallace L. Heil, Mathilda Jakubowski, Grace Kaminkowitz, Saul J. Morse, Jane Hayes Rader, Randall Raynolds and Alfred C. Whitley, as Commissioners of said Human Rights Commission, and Rebecca R. Pallmeyer, as an Administrative Law Judge of said Human Rights Commission, Defendants,**

**and**

**Bettye Moore, Intervenor.**

**No. 89 C 7414.**

United States District Court, N.D. Illinois, E.D.

May 18, 1990.

Charles F. Marino, Chicago, Ill., for plaintiff.

Marita C. Sullivan, Asst. Atty. Gen., Neil F. Hartigan, Atty. Gen., Chicago, Ill., for defendants.

Robert R. Cohen, Mark Nitczynski, Mandel Legal Aid Clinic, Chicago, Ill., for intervenor.

## MEMORANDUM OPINION AND ORDER

MAROVICH, District Judge.

Plaintiff John E. Reid and Associates, Inc. ("Reid") brought this declaratory judgment action against the Illinois Human Rights Commission ("Commission"), its individual commissioners, and one of the Commission's Administrative Law Judges ("ALJ"). Reid is a polygraph examiner and is currently a defendant in a race discrimination proceeding before the Commission based on a complaint brought by Bettye Moore, and has been ordered to turn over certain polygraph records beyond those relating to his examinations of Moore. Reid seeks declaratory relief and an injunction preventing the Commission from enforcing its order. Moore has been granted leave to intervene in this suit. Before the court are Reid's and Moore's cross-motions for summary judgment. For the following reasons, Reid's complaint is dismissed for lack of subject matter jurisdiction.

## I. BACKGROUND

Intervenor Bettye Moore was employed as a bookkeeper by Canteen Corporation. In January of 1982, Canteen required Moore to take a polygraph examination as part of Canteen's investigation of an al-

leged theft. An examiner from Reid's office administered the examination on January 15, 1982, and a different examiner administered another examination on February 5, 1982. Reid reported to Canteen that Moore was untruthful on certain questions and that she had admitted to stealing no more than one hundred dollars from Canteen in the previous year for cab fare, lunches, and bus fare. Moore had previously, on July 12, 1979, taken a polygraph examination administered by Reid at the request of Canteen and been found truthful on all questions.

Shortly after the February, 1982 examination, Canteen discharged Moore and she filed a charge of race discrimination with the Commission against Canteen. This charge was eventually settled. Moore also filed a discrimination charge against Reid, alleging that Reid aided and abetted Canteen in discriminating against her by intimidating and harassing her during the examinations and by inaccurately reporting to Canteen that she had been deceptive or untruthful during those examinations. On August 26, 1988, Moore served a discovery request on Reid in which she asked for all polygraph examination records for Canteen employees tested by Reid between January 1, 1979 and December 31, 1983, for the purpose of comparing Reid's treatment of Moore with its treatment of other employees.

Reid refused to turn over the requested records, and following a motion to compel and a lengthy briefing, the Commission's ALJ ordered Reid to produce the records on February 7, 1989. Exhibit B to Intervenor Moore's Motion for Summary Judgment at 2. In ordering the records, the ALJ also entered a protective order providing that the polygraph records were not to be disclosed to or reviewed by anyone other than Moore's attorneys and their assistants. *Id.* at 13. The order also provided that Moore's attorneys were allowed to ask questions of the employees whose records were obtained, or of anyone else who would have relevant information on their examinations. *Id.*

Reid requested that the ALJ certify for interlocutory review the portion of the February 7th discovery order which required it to produce the examination records of present and former Canteen employees. On May 2, 1989, the ALJ entered an order certifying the question to the Commission. Exhibit A to Plaintiff's Motion for Summary Judgment. On August 4, 1989, the Commission entered an order affirming the ALJ's decision compelling the production of all polygraph examination records of Canteen employees tested by Reid between January 1, 1979 and December 31, 1983. Exhibit B to Plaintiff's Motion for Summary Judgment.

On September 29, 1989, Reid filed this complaint seeking declaratory and injunctive relief against the Commission, the individual commissioners, and the ALJ who issued the discovery order. Reid contends that the production of the polygraph records of non-parties to the proceeding before the Commission would violate the Employee Polygraph Protection Act ("EPPA"), 29 U.S.C. §§ 2001–09. The EPPA places significant limitations on disclosure of polygraph records, though it allows an examiner to disclose records when ordered to do so by a "court of competent jurisdiction." 29 U.S.C. § 2008(b)(3). The effective date of the Act was December 27, 1988. Reid seeks a declaration that the Act applies to records in the possession of an examiner on the effective date of the Act where the examinations were conducted before the effective date of the Act. It also seeks a declaration that neither the ALJ nor the Commission is a "court of competent jurisdiction" within the meaning of the EPPA. Finally, Reid seeks an injunction prohibiting defendants from compelling it to turn over the records in question.

Moore has been granted leave to intervene in this action, and Reid and Moore have both filed motions for summary judgment. The motions raise the following main issues: whether this suit arises under federal law so that this court has subject matter jurisdiction under 28 U.S.C. § 1331; if this court does have subject matter jurisdiction, whether we should abstain from

exercising it; whether an injunction in this case would be barred by the Anti–Injunction Act, 28 U.S.C. § 2283; whether the EPPA applies to records in the possession of an examiner on the effective date of the Act where the examinations were conducted before this date; and whether the Illinois Human Rights Commission is a "court of competent jurisdiction" within the meaning of the EPPA. We find that we do not have subject matter jurisdiction over this suit because it does not arise under federal law, as required by 28 U.S.C. § 1331. In addition, we find that even if we did have jurisdiction over this case we would abstain from exercising it. We do not rule on the remaining issues.

## II.  DISCUSSION

A.  Federal Question Jurisdiction

■ This court does not have subject matter jurisdiction over this case unless it is one "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Federal question jurisdiction under § 1331 is complicated by the existence of the Declaratory Judgment Act, which authorizes district courts to issue declaratory judgments in "case[s] of actual controversy within [their] jurisdiction. . . ." 28 U.S.C. § 2201. The United States Supreme Court considered the question of jurisdiction over declaratory judgment actions in *Public Service Comm'n v. Wycoff Co.*, 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (1952). In *Wycoff* a transporter of films and newsreels sought a declaration that its activities constituted interstate commerce. *Id.* at 239, 73 S.Ct. at 238. The Court found that the complaint should be dismissed because no "actual controversy" existed, *id.* at 245–46, 73 S.Ct. at 241, but also stated in dicta that: "[w]here the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not of the defense, which will determine whether there is federal question jurisdiction in the District Court." *Id.* at 248, 73 S.Ct. at 242. This statement seems to indisputably support Moore's position that no

federal question jurisdiction exists in this case, but a recent Seventh Circuit has shed more light on this quote, and further analysis is needed.

In *Illinois v. General Electric Co.*, 683 F.2d 206 (7th Cir.1982), the Seventh Circuit found that federal question jurisdiction existed over a declaratory judgment action brought by a waste facility operator and one of its customers, both of whom claimed that an Illinois statute was preempted by federal law. *Id.* at 208, 210–11. The operator of the facility and its customer, an out-of-state utility, had a contract providing for the utility's shipment of spent nuclear fuel to the operator's facility in Illinois. *Id.* at 208. The parties' arrangement was threatened by an Illinois law which prohibited spent nuclear fuel used in an out-of-state plant from being shipped into Illinois. *Id.* After finding that an actual controversy existed, the court found that the case arose under federal law because the operator brought suit under the commerce and supremacy clauses, which create equitable rights enforceable in federal court. *Id.* at 211. In commenting on the above dicta in *Wycoff,* the court stated:

> Now at one level the dictum is an innocuous if perhaps overbroad statement of the principle that you cannot get around the limitations on the removal jurisdiction of the federal courts by asserting your defenses in a federal declaratory judgment action. But at another level, if understood to require federal claimants always to litigate their claims as defenses in state court if they can, it must be wrong, and though lower federal courts have followed it from time to time the Supreme Court has not.

*Id.*

Federal question jurisdiction over Reid's complaint does not exist in this case. *General Electric* makes it clear that *Wycoff* should not be read to mean that a party must litigate his federal claims as defenses in state court if possible, and to the extent that Moore suggests that this is the law she is incorrect. However, this is not a case where a plaintiff has an affirmative federal claim which alternatively could be

raised as a defense in a state court action. Rather, this is a case in which Reid's claim arose solely as a defense to a state court order and it is attempting to "get around the limitations on the removal jurisdiction of the federal courts by asserting [its] defenses in a federal declaratory judgment action." 683 F.2d at 211.

In determining whether a declaratory judgment action arises under federal law, the focus should not be solely on the character of the pending or threatened state court action; rather, it should be more on whether the federal plaintiff is claiming an affirmative federal right. In *General Electric* federal question jurisdiction existed because the plaintiff was claiming an affirmative federal right under the commerce and supremacy clauses, 683 F.2d at 211, but Reid is not asserting such a right in this case. In determining whether a plaintiff is asserting an affirmative federal right, it is instructive to consider how his claim originally arose. In *General Electric* the plaintiffs were faced with an Illinois law which would have made their business dealings illegal. As in almost any declaratory judgment case involving a state law, they could have asserted their claims in a state enforcement proceeding, but they were also seeking to protect an affirmative right—their right to ship and receive spent nuclear fuel. *Id.* at 208. In this case, by contrast, Reid's asserted claim under the EPPA arose *only* as a defense to the proceeding before the Illinois Human Rights Commission, or more specifically, as a defense to a discovery order entered in that proceeding. Reid is clearly acting defensively; were it not for the proceeding before the Commission, he would not be able to claim any right under the EPPA. The distinction between *General Electric* and our case, then, is that in *General Electric* the plaintiffs asserted a federal right which would exist independently of any state court enforcement proceeding, and in our case Reid's claim arises purely as a defense to proceedings before an administrative agency. Reid's complaint does not arise under federal law and this court thus does not have subject matter jurisdiction over this case.

## B. Abstention

Even if we were to find that we had subject matter over this case, we would abstain from exercising our jurisdiction under the principles first espoused in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). In *Younger* the Supreme Court held that federal courts should not enjoin pending state criminal prosecution except in extraordinary circumstances. The *Younger* abstention doctrine was extended to state administrative proceedings in *Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.,* 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986).

In *Dayton Christian Schools* the Ohio Civil Rights Commission initiated a state administrative proceeding charging Dayton with sex discrimination. 477 U.S. at 624, 106 S.Ct. at 2721. Dayton then sued in federal district court, seeking an injunction against the state proceedings on the ground that any investigation of Dayton's hiring process or imposition of sanctions against it for discriminatory behavior would violate the First Amendment. *Id.* at 624–25, 106 S.Ct. at 2721. The Court held that *Younger* abstention was appropriate, and that abstention was generally proper in favor of "state administrative proceedings in which important state interests are vindicated, so long as in the course of those proceedings the federal plaintiff would have a full and fair opportunity to litigate his constitutional claim." *Id.* at 627, 106 S.Ct. at 2722.

*Dayton Christian Schools* is directly applicable here and would mandate abstention even if we had jurisdiction. We find only two plausible distinctions to draw between that case and our case, and neither supports our exercising jurisdiction over this suit. The first is that in this case not only would enforcement of the discovery order possibly subject Reid to liability for acts of discrimination against Moore, Reid claims that it would make it liable under the EPPA to third parties whose records it produced. Given the fact that Reid has an opportunity to make this latter argument in the state proceeding, we do not find that its

potential exposure to two types of liability makes any difference. A second distinction is that in *Dayton Christian Schools* the federal plaintiff sought to enjoin the entire state proceeding, while here Reid seeks to enjoin only enforcement of the order compelling production of the polygraph records. This distinction also does not suggest that abstention is appropriate here. To issue an injunction here preventing the Commission from enforcing the discovery order would disrupt the proceedings virtually as much as enjoining them altogether, because Moore's proof depends in large part upon the examination records at issue.

As in *Dayton Christian Schools*, the usual prerequisites for abstention are also present here. Elimination of discrimination is clearly an important state interest. 477 U.S. at 628, 106 S.Ct. at 2723. In addition, Reid has a full and fair opportunity in the state administrative proceedings to litigate its federal claim. It had an opportunity to raise its federal claim before the Commission, and may raise its claim in Illinois Circuit Court if the Commission or Moore attempts to enforce the discovery order. Ill.Rev.Stat. ch. 68, § 8–111(B). Finally, we add that Reid's interest in coming to federal court is less than that of most plaintiffs; it is raising a federal statutory claim rather than claiming a violation of its constitutional rights. *Cf. Dayton Christian Schools*, 477 U.S. at 624–25, 106 S.Ct. at 2721–22. This court does not have jurisdiction over Reid's suit because it does not involve a federal question. Even if we had jurisdiction, however, we would abstain from exercising it under *Younger* and *Dayton Christian Schools*.

### III. CONCLUSION

For the above reasons, plaintiff's complaint is dismissed for lack of subject-matter jurisdiction.

### JUDGMENT IN A CIVIL CASE

IT IS ORDERED AND ADJUDGED that plaintiff, John E. Reid and Associates, Inc.'s claim arises purely as a defense to proceedings before an administrative agency. Reid's complaint does not arise under federal law and this court thus does not have subject matter jurisdiction over this case as required by 28 U.S.C. Sec. 1331. Even if the court were to find that it had subject matter over this case, it would abstain from exercising its jurisdiction under the principles first espoused in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and in *Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.*, 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1968). Plaintiff's complaint is dismissed for lack of subject-matter jurisdiction.