Vincent J. PINETTE, et al., Plaintiffs,

v.

**CAPITOL SQUARE REVIEW AND ADVISORY BOARD, et al.,**
Defendants.

No. C2–93–1162.

United States District Court,
S.D. Ohio, E.D.

Dec. 21, 1993.

Benson A. Wolman, Moots, Cope & Stanton, Columbus, OH, for Vincent J. Pinette, Donnie A. Carr and Knights of the Ku Klux Klan, Ohio Realm.

Richard Adams Cordray, Ohio Atty. Gen., Columbus, OH, for Capitol Square Review and Advisory Bd.

## OPINION AND ORDER

GRAHAM, District Judge.

This matter is before the Court upon a motion for a temporary restraining order and preliminary injunction filed by plaintiffs and upon a hearing held thereon on December 20, 1993. At the outset of the hearing, the Court announced that it would consolidate the hearing on the motion for preliminary injunction with a trial on the merits of Count One of the Amended Complaint pursuant to Fed.R.Civ.P. 65(a)(2).

### FINDINGS OF FACT

1. Plaintiffs seek a permit to "Erect A Cross For Christmas" on the Capitol Square in Columbus, Ohio for the remainder of the time between December 8, 1993 and December 24, 1993.

2. Plaintiffs are the Knights of the Ku Klux Klan (Ohio Realm) (hereinafter "the Klan"), its chief executive officer, Vincent J. Pinette, and its Unit Coordinator for Columbus, Ohio, Donnie A. Carr. The Klan is an unincorporated association whose members reside in the State of Ohio.

3. Defendants are the Capitol Square Review and Advisory Board (hereinafter "the Board"), a state board chartered under Ohio Revised Code § 123.022, its executive director, Ronald T. Keller, its spokesperson, Daniel Shellenbarger, and its chairperson, State Senator Richard H. Finan.

4. The Capitol Square, which is defined by law in § 123.022(I) of the Ohio Revised Code, comprises an entire city block in downtown Columbus, Ohio, located south of Broad Street, north of State Street, east of High Street and west of Third Street. The Capitol Square is owned by the State of Ohio. It is the site of the Ohio state capitol building.

5. For many years, the Capitol Square grounds have been made available for speeches and public gatherings by various groups advocating various causes both secular and religious. For the past several years, displays have been placed upon the Capitol Square for limited periods during the month of December. These have included a Christmas tree and a free-standing Hanukkah menorah, which is a nine-branch candelabrum that serves as the primary symbol of the Jewish holiday of Hanukkah.

6. On November 18, 1993, the Capitol Square Review and Advisory Board, which regulates the use of the Capitol Square, voted not to permit displays on the Capitol Square during December, 1993. The vote was later declared invalid and, on November 23, 1993, the Board voted to approve displays of a Christmas tree and a menorah.

7. On November 29, 1993, Rabbi Capland applied for permission to erect a menorah on the Capitol Square from December 8–16, 1993. The application described the type of event as a "seasonal display." The application was granted the same day by defendant Keller.

8. On November 29, 1993, plaintiff Carr applied on behalf of the Klan for a permit to display a cross on the Capitol Square from December 8–24, 1993. The application described the type of event as to "erect a cross for Christmas."

9. Executive Director Keller denied the permit four days later, on December 3, 1993. Keller stated in the letter denying the request that the decision to deny the permit "was made upon the advice of counsel, in a good faith attempt to comply with the Ohio and United States Constitutions, as they have been interpreted in relevant decisions by the Federal and State Courts. We would direct your attention in particular to controlling decisions recently rendered by the United States Supreme Court under the First Amendment to the United States Constitution."

10. On December 9, 1993, the plaintiffs appealed this decision to the Board.

11. The same day, in a separate letter to counsel for the Board, plaintiffs' counsel indicated that the cross "would be approximately 10 feet high, 6 feet across, made from 2 × 6 lumber, painted white, secured upright by a free-standing tripod, and accompanied by a sign, readable from a distance, 'this cross was erected by private individuals without government support for the purpose of expressing respect for the holiday season and to assert the right of all religious views to be

expressed on an equal basis on public property.'" Plaintiffs' counsel further stated in this letter that "some matters, such as the contents of the sign, are open to negotiation."

12. A state administrative appeal on this matter was conducted by a hearing officer on December 17, 1993 at 3:00 p.m. The hearing was concluded shortly after 5:00 p.m. on December 17th. The hearing officer issued his report and recommendation on December 21, 1993, finding that the Board's earlier denial of the permit was proper. The Board adopted his report and recommendation on December 21, 1993. On December 21, 1993 the Court was provided with a copy of the hearing officer's report and recommendation and entertained additional arguments of counsel on the effect of the Board's adoption of that report on the issues before this Court. The Court found, for the reasons stated on the record of the December 21, 1993 proceedings, that plaintiffs alleged failure to post a bond was not a proper ground for the denial of the permit and that that issue was not properly before this Court.

13. A Christmas tree has been displayed upon the Capitol Square from December 7, 1993 to the present and remains on display. A menorah was displayed upon the Capitol Square from December 8–16, 1993. On other occasions organizations have been permitted to erect free-standing displays on the Capitol Square for a limited period of time. Examples include the United Way Campaign "thermometer" and craftsmen's booths and displays erected during an Arts Festival. There is no policy against such displays.

14. Defendants do not contend that the erection of a cross poses a security risk of any kind.

### CONCLUSIONS OF LAW

The defendants initially argued that the doctrines of finality and abstention precluded this Court from addressing plaintiffs' claims at this time. Those issues were resolved when the Board adopted the report and recommendation of the hearing officer. Thus, the sole issue now before this Court is whether plaintiffs are entitled under the First or Fourteenth Amendment to erect a Latin cross on the Capitol Square or whether this conduct would violate the Establishment Clause.

In order to prevail, plaintiffs must establish the following:

1) defendants' actions in refusing to issue the permit contravene plaintiffs' rights under the Constitution of the United States;

2) the plaintiffs will suffer irreparable injury absent injunctive relief;

3) the plaintiffs have no adequate remedy at law.

*Dayton Christian Schools, Inc. v. Ohio Civil Rights Comm'n,* 766 F.2d 932, 961 (6th Cir. 1985), *rev'd on other grounds,* 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986); *Buckhorn, Inc. v. Ropak Corp.,* 656 F.Supp. 209, 226 (S.D. Ohio 1987).

■ Assuming that the plaintiffs are entitled to erect such a display, they will suffer irreparable injury for which they have no adequate legal remedy if the defendants are not enjoined from denying them a permit. There is no other way for the plaintiffs to effectively vindicate their constitutional rights. Accordingly, plaintiffs' entitlement to the requested relief turns on the merits of their claim.

At the outset, the Court must determine whether the Capitol Square is a traditional public forum. The Supreme Court has defined three types of fora: "the traditional public forum, the public forum created by government designation, and the nonpublic forum." *Cornelius v. NAACP Legal Def. & Educ. Fund,* 473 U.S. 788, 802, 105 S.Ct. 3439, 3449, 87 L.Ed.2d 567 (1985). Traditional public fora are "those places which by long tradition or by government fiat have been devoted to assembly and debate." *Id.*

■ The evidence before this Court clearly establishes that the Capitol Square has been held open and used as a public forum for a considerable number of years. The Statehouse grounds have been made available for speeches or displays by gay, lesbian and bisexual groups, United Way of Franklin County, the Knights of the Ku Klux Klan, and commercial entities including participants in the Central Ohio Art Festival. Dur-

ing the December holiday season, the Capitol square has also been used to display a menorah erected by a private organization. Thus, the Court finds that the Capitol Square is a traditional public forum.

█ The Capitol Square's status as a traditional public forum affords the plaintiffs significant constitutional protection. The First Amendment Free Speech Clause prohibits content-based regulation of the use of public fora. In *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46, 103 S.Ct. 948, 955, 74 L.Ed.2d 794 (1983), the Supreme Court held that no government may exclude speech from a traditional public forum unless "it's regulation is necessary to serve a compelling state interest and ... is narrowly drawn to achieve that end." *See also Americans United for Separation of Church and State v. City of Grand Rapids*, 980 F.2d 1538, 1541 (6th Cir.1992) (*en banc*).

█ Religious expression enjoys the same First Amendment protection as do other types of protected expression. *Widmar v. Vincent*, 454 U.S. 263, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981); *Heffron v. International Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981); *Grand Rapids*, 980 F.2d at 1542. Moreover, these protections extend beyond pure speech to any conduct that may be "sufficiently imbued with elements of communication to fall within the scope of the First and Fourteenth Amendments." *Spence v. Washington*, 418 U.S. 405, 409, 94 S.Ct. 2727, 2730, 41 L.Ed.2d 842 (1974). *See also Grand Rapids*, 980 F.2d at 1542. Thus, the Court must be particularly cautious about abridging an individual's right to freedom of speech based upon the religious content of the message. *Grand Rapids*, 980 F.2d at 1542.

Defendants, however, raise a countervailing constitutional concern. Defendants contend that the State of Ohio violates the Establishment Clause by permitting a private organization to erect a large, unattended Latin cross upon the Capitol Square during the observance of the Christmas holiday. Defendants contend that while the Capitol Square might be a public forum subject to the First Amendment protections outlined

above, its status as the seat of state government renders the display of a Latin cross an establishment of religion in violation of the First Amendment.

█ Based upon the Sixth Circuit's recent interpretation and application of *County of Allegheny v. Greater Pittsburgh ACLU*, 492 U.S. 573, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989) in *Americans United for Separation of Church and State v. City of Grand Rapids*, 980 F.2d 1538 (6th Cir.1992), this Court finds that plaintiffs' display does not constitute a government endorsement of religion, notwithstanding the fact that the Ohio state house is also located on the Capitol Square. In *Grand Rapids*, the Sixth Circuit considered whether a city's permitting a religious organization to place a private menorah displayed in a traditional public forum during Hanukkah violated the Establishment Clause. *Id.* at 1542–43. The religious organization, Chabad House, had placed a 20–foot high menorah in Calder Plaza, the principle public plaza in downtown Grand Rapids. *Id.* at 1539–40. The plaza was surrounded by private office and government buildings including the Kent County Building, Grand Rapids City Hall, and the Federal Building. The county Hall of Justice, the city police station and the State of Michigan Office Building were also on opposing sides of the streets adjacent to the plaza. *Id.* at 1540. The menorah was accompanied by two signs measuring two feet by three feet which were illuminated at night. The signs read as follows:

Happy Chanukah to All

This Menorah display has been erected by Chabad House, a private organization. Its presence does not constitute an endorsement by the City of Grand Rapids of the organization or the display.

The menorah was paid for, erected, maintained and stored by the private organization. *Id.* at 1539.

Seeking to determine whether the city was violating the Establishment Clause by permitting the menorah display, the Sixth Circuit applied the three-part test of *Lemon v.*

*Kurtzman,* 403 U.S. 602, 612–13, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971):

First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion; finally, the statute must not foster "an excessive government entanglement with religion."

The appellate court found that the first and third prongs of the test were easily satisfied. *Id.* 980 F.2d at 1543. A policy of permitting religious speech the same access as other types of speech serves a secular purpose. *Id.* This general access policy also avoids entangling government with religion, since no government official need decide which groups use the plaza. *Id.*

Turning to the second element of the *Lemon* test, the Sixth Circuit recognized that in *County of Allegheny* the Supreme Court had adopted a test first proposed by Justice O'Connor in *Lynch v. Donnelly,* 465 U.S. 668, 688, 104 S.Ct. 1355, 1367, 79 L.Ed.2d 604 (1984):

Since *Lynch,* the Court has made clear that, when evaluating the effect of government conduct under the Establishment Clause, we must ascertain whether "the challenged governmental action is sufficiently likely to be perceived by adherents of the controlling denominations as an endorsement, and by the nonadherents as a disapproval, of their individual religious choices."

*Grand Rapids,* 980 F.2d at 1543 (quoting *County of Allegheny,* 492 U.S. at 597, 109 S.Ct. at 3103 (Opinion of Blackmun, J.) (quoting *School Dist. of Grand Rapids v. Ball,* 473 U.S. 373, 390, 105 S.Ct. 3216, 3226, 87 L.Ed.2d 267 (1985))). Accordingly, the Sixth Circuit framed the test as "whether *the* reasonable observer *would* conclude that Grand Rapids endorses religion by allowing Chabad House's display." *Grand Rapids,* 980 F.2d at 1544 (emphasis in original). Ultimately, the court concluded that the reasonable observer familiar with the many uses of the plaza would not interpret the menorah's presence as an endorsement of religion by the government. *Id.* at 1545. "[A] reasonable observer recognizes the distinction between speech the government *supports* and speech that it *allows.*" *Id.* (emphasis in original).

The plaintiffs in *Grand Rapids* identified several aspects of the menorah display which tended to suggest that the city was endorsing a religion: the display sent a religious message; it stood near the heart of local government; and it did not include secular symbols. *Id.* at 1544. Although the court agreed that these factors tended to support the claim that the display violated the Establishment Clause, the appellate court reasoned that "two crucial facts make this case very different from many holiday display cases: Chabad House's display is privately sponsored, and it stands in a traditional public forum to which all citizens have equal access." *Id.* at 1545. While these facts were not automatically determinative, the court stated that recent precedent indicated that "they should carry much more weight than the details of the display emphasized by the plaintiffs." *Id.*

The appellate court found it extremely significant that this speech was private in nature. The court noted that *County of Allegheny* involved a situation where the county gave a special preference to the group displaying the creche on the grand staircase, associated itself with the creche in county press releases and visually linked the county with the creche by placing next to official county signs two small evergreens identical to those in the creche display. *Id.* By doing so, the county effectively associated itself with that particular religious message. *Id.* No comparable connection between government and religion could be drawn from the menorah's presence on the plaza. According to the court, "the display at issue is purely private, with neither overt nor covert government support, and this fact weighs heavily against a finding of endorsement." *Id.* 980 F.2d at 1546.

The appellate court found that the presence of disclaimer signs further evidenced the private nature of this speech. "[T]he signs make the private ownership of the menorah obvious to anyone who cares to investigate the possibility of government endorsement." *Id.* These disclaimers were thus

found to be another factor weighing in favor of allowing the display.

As important as private sponsorship was the fact that the city had traditionally provided all parties equal access to Calder Plaza. *Id.* The Sixth Circuit noted that the Supreme Court had repeatedly held that where an equal access policy exists, religious speech must be afforded the same privileges as nonreligious speech, the Establishment Clause notwithstanding. *Id.* at 1546–48.

The court also rejected plaintiffs' argument that the menorah display violated the Establishment Clause because it stood alone. *Id.* at 1549. The court explained that the symbol was *in itself* speech and did not have to be accompanied by adherents in order to be afforded the full panoply of protections. *Id.* Finally, the court observed that any tendency the menorah standing alone might have toward suggesting state endorsement of that religious view was "simply overwhelmed by Calder Plaza's status as a traditional public forum." *Id.* As the court explained:

> To a *reasonable* observer, no display actually stands alone in this public forum. In the mind's eye, the reasonable observer sees the menorah display as but one of a long series that has taken place since the Plaza was opened. The reasonable observer knows that other speakers have used the Plaza before, and will do so again. Instead of concluding that religious zealots have stormed the gates with the city's endorsement, the reasonable observer recognizes this display as yet another example of free speech.

*Id.*

Applying the Sixth Circuit's reasoning in *Grand Rapids* to the facts and issues presented in the instant case leaves little doubt that the plaintiffs must be permitted to erect a cross on the Capitol Square. The instant request comes from a private party to erect a religious symbol in what is a traditional public forum. In light of these facts, it is difficult to conclude that permitting this display would constitute government endorsement of religion. The *Grand Rapids* court plainly stated that the two most important factors in holiday display cases are the identity of the sponsor and the nature of the forum. *Id.* at

1553. ("Thus, we rule in favor of Grand Rapids and Chabad House, because we hold that truly *private* religious expression in a truly *public* forum cannot be seen as endorsement by a reasonable observer.")

Notwithstanding these considerations, the defendants—relying on *County of Allegheny* and its progeny—contend that this religious display at the seat of government will give rise to an Establishment Clause violation. Yet, *County of Allegheny* involved very obvious efforts by the government to associate itself with a particular religious display. By contrast, the State of Ohio is in no way associating itself with the plaintiffs' display. Indeed the "reasonable" observer—being an individual who is knowledgeable about local events—might well know by virtue of all of the recent media coverage that the state of Ohio as represented by its leading elected officials opposes the display of the cross and any messages which might reasonably be associated with this display by the Klan. Moreover, the reasonable observer would likely know that a menorah was displayed during the celebration of Hanukkah, and a Christmas tree has been displayed throughout the month of December. From all of this, the reasonable observer should conclude that the government is expressing its toleration of religious and secular pluralism.

The fact that plaintiffs have chosen to display a Latin cross rather than some other religious symbol does not alter this Court's conclusions. The *Grand Rapids* decision does not expressly limit itself to those religious symbols which are most commonly or naturally associated with a particular holiday season. Indeed, a more recent Sixth Circuit decision indicates that the appellate court views crosses in much the same light as menorahs. *See Congregation of Lubavitch v. City of Cincinnati*, 997 F.2d 1160, 1164 (6th Cir.1993):

> It is settled law in this circuit that a city does not violate the Establishment Clause by permitting a private organization, during the observance of Chanukah, to erect a large unattended menorah in a public square that is a traditional public forum. *Americans United for Separation of Church and State v. City of Grand Rapids,*

980 F.2d 1538 (6th Cir.1992) (*en banc*). Also, at this late date it cannot be argued that the display of such an object as a menorah or a cross is not "symbolic speech" that is protected by the free speech provisions of the First Amendment. *Cf. Texas v. Johnson,* 491 U.S. 397, 404, 109 S.Ct. 2533, 2539, 105 L.Ed.2d 342 (1989).

Based on the foregoing, the Court concludes that the defendants have failed to demonstrate under the facts of this case that the reasonable observer would construe the erection of a Latin cross on the Capitol Square during the holiday season as an endorsement of religion.

## *CONCLUSION*

The plaintiff in this case bears a name which in the public conscience has come to represent racial hatred, a name which has been historically associated with violence against minorities. It is ironic and in the most literal sense diabolical that a group bearing this name would seek to publicly display the symbol of Jesus of Nazareth known to Christians and non-Christians alike as the Prince of peace. It should be obvious, however, that the constitutional right of freedom of speech would be meaningless if it did not apply equally to all groups, popular and unpopular alike. Plaintiffs are entitled to an injunction requiring the defendants to issue a permit to erect a cross on Capitol Square for the remainder of the time between today's date and December 24, 1993.

It is so ORDERED.