896 F.2d 1138
 58 USLW 2516
 ALLEGHANY CORPORATION, Appellant,
v.
William H. McCARTNEY, in his official capacity as Director
of Insurance for the State of Nebraska, Appellee,
St. Paul Property and Casualty Company and the St. Paul
Companies, Inc., Intervenors.
 No. 89-1241.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 12, 1989.
Decided Feb. 27, 1990.
 
 Tim Tinkham, Minneapolis, Minn., for appellant.
 Robert G. Lange, Lincoln, Neb. and Richard J. Urowsky, New York City, for appellee.
 Before JOHN R. GIBSON, Circuit Judge, BROWN,* Senior Circuit Judge, and WOLLMAN, Circuit Judge.
 JOHN R. GIBSON, Circuit Judge.
 
 
 1
 The Alleghany Corporation appeals from the dismissal of its action against William H. McCartney, Director of Insurance for the State of Nebraska, in which Alleghany sought a declaratory judgment that the Nebraska Insurance Holding Companies Act, Neb.Rev.Stat. Secs. 44-2101 to -2119 (Reissue 1988), was invalid and requested appropriate injunctive relief. Alleghany had sought approval from McCartney, as Director of Insurance, to acquire up to 20% of the common stock of the St. Paul Companies, Inc., a holding company incorporated and based in Minnesota, which, through a wholly-owned subsidiary, owned St. Paul Property and Casualty Company, an insurance subsidiary incorporated in Nebraska. McCartney held hearings on the proposed acquisition and then denied Alleghany's application, even though the transaction had already been approved by the Deputy Commissioner of Commerce in Minnesota. Alleghany then brought this suit which was dismissed by the district court[1] on the ground that abstention was appropriate under Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). On appeal, Alleghany asserts that Younger abstention serves no comity purpose here because this case presents an inherently interstate controversy. In addition, Alleghany argues that abstention is improper because this action involves challenges based on the commerce and supremacy clauses, and because there are no pending state administrative or judicial proceedings. We conclude that the district court properly abstained under Younger and affirm the order of dismissal.
 
 I.
 
 2
 St. Paul Companies, through its Minnesota subsidiary, St. Paul Fire and Marine, wholly owns insurance subsidiaries incorporated in eight states, including the Nebraska corporation, St. Paul Property and Casualty. Alleghany started purchasing St. Paul Companies' stock in July 1987. By October 5, 1987, it had acquired 5% of the stock of the St. Paul Companies, and therefore filed a Schedule 13D with the Securities and Exchange Commission on October 15, 1987, as required by the Williams Act, 15 U.S.C. Sec. 78m(d) (1988); 17 C.F.R. Sec. 240.13d-1 (1988). It also filed a notice of its intent to purchase in excess of 15% of the stock of the St. Paul Companies with the Federal Trade Commission and Department of Justice as required by the Hart-Scott-Rodino Act, 15 U.S.C. Sec. 18a (1982), and approvals were granted on November 24, 1987. At the time of initiating this action, Alleghany already owned 9.5% of the 45 million outstanding shares of the common stock of the St. Paul Companies, and sought to purchase up to 20% of its stock.
 
 
 3
 St. Paul Property and Casualty accounts for .04% (four one-hundredths of one percent) of the statutory assets and approximately 1% of the premium income of the St. Paul Companies' insurance subsidiaries. Its role in the Nebraska insurance market, however, is much more significant. The record revealed that insurance coverage provided by St. Paul Property and Casualty included professional liability insurance coverage for over 70% of the physicians and hospitals in the state of Nebraska.
 
 
 4
 After the federal filings, Alleghany sought state regulatory approval in ten states, including Minnesota and Nebraska, as required by state insurance holding company statutes. Forty-eight states have similar insurance holding company statutes in effect, all of which are patterned after the Model Insurance Holding Company Systems Regulatory Act. While Alleghany took the position that these statutes were unconstitutional, it filed in compliance with the statutes in the hope that approval would make constitutional challenges unnecessary. Insurance regulatory commissions in four of the states, including Minnesota, approved Alleghany's applications to purchase St. Paul Property and Casualty stock, but commissions in four states, including Nebraska, disapproved.[2]
 
 
 5
 At the administrative proceedings before the Nebraska Director of Insurance, the record of the administrative hearing in Minnesota approving Alleghany's proposed transaction was admitted into evidence, and additional evidence was also presented over a two-day period. The Director denied Alleghany's application on the basis of his conclusions that:
 
 
 6
 (a) The financial condition of Alleghany is such as would jeopardize the financial stability of St. Paul or prejudice the interest of its policyholders;
 
 
 7
 (b) The plans and proposals which the acquiring party has to liquidate the domestic insurer, cause it to declare dividends or make other distributions, sell any of its assets, consolidate or merge it with any person, make any material change in its business or corporate structure or management, are unfair and prejudicial to the policyholders of the insurer; and
 
 
 8
 (c) The competence and experience of Alleghany management, which would control the operations of St. Paul and its subsidiaries if Alleghany acquired control are such that it is not in the interest of the public and the policyholders of St. Paul to permit Alleghany to make the proposed acquisition.
 
 
 9
 The Director's order was entered on April 18, 1988. Under Neb.Rev.Stat. Sec. 84-917 (Reissue 1987), Alleghany had thirty days after service of the final decision to commence proceedings for review in the District Court of Lancaster County, Nebraska. Alleghany did not seek such review, but instead chose to file this complaint in federal district court during the thirty-day appeal period, which obviously has now passed.
 
 
 10
 In its district court action, Alleghany did not challenge the factual determinations of the Director of Insurance but did assert, pursuant to 42 U.S.C. Sec. 1983 (1982), commerce clause, supremacy clause, and due process clause challenges to those provisions of the Nebraska Act which regulate interstate and nationwide transactions involving securities issued by insurance holding companies. The St. Paul Companies and St. Paul Property and Casualty, as intervenors, and the Director moved to dismiss Alleghany's complaint on the basis of Younger or Burford abstention. The district court applied the three requirements of Younger, as refined by Middlesex County Ethics Committee v. Garden State Bar Association, 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982), and concluded that important state interests were involved, that there were ongoing state judicial proceedings, and that there existed an adequate opportunity in the state proceedings to raise the constitutional challenges.
 
 
 11
 The district court determined the nature of the available proceedings by examining state law, Neb.Rev.Stat. Sec. 84-917. This Nebraska statute authorized review in Nebraska state court on the record of the agency. The court found that this statute authorized a reviewing state court to affirm, remand, reverse, or modify the decision of the Director of Insurance if the decision was, among other things, "[i]n violation of constitutional provisions," "[i]n excess of the statutory authority or jurisdiction of the agency," "[a]ffected by other error of law," or "[a]rbitrary or capricious." Id. Sec. 84-917(6). The court then looked to the Nebraska Insurance Holding Companies Act, which permitted the Director to disapprove any acquisition of control--defined as ownership of 10% or more of a company's voting securities--if he finds that the acquisition could substantially lessen competition, create a monopoly, or if the financial condition of the acquiring company would jeopardize the financial stability of the insurer or prejudice the interest of the policyholders. Id. Sec. 44-2119. The court also noted that the authority of the Director of Insurance was similar to that given the State Board of Education under Neb.Rev.Stat. Sec. 79-1103.05 (Reissue 1987). The court found it persuasive that the Board of Education's authority had been found by the Supreme Court of Nebraska to be quasi-judicial in character and therefore subject to appeal under section 84-917. Richardson v. Board of Educ., 206 Neb. 18, 290 N.W.2d 803 (1980). The court then concluded that there was an ongoing judicial proceeding which implicated important state interests, and that Alleghany had an adequate opportunity to present its constitutional challenges in the Nebraska state courts. The court found it to be irrelevant that Alleghany had not appealed from the Director's decision, relying on Huffman v. Pursue, Ltd., 420 U.S. 592, 611 n. 22, 95 S.Ct. 1200, 1211 n. 22, 43 L.Ed.2d 482 (1975). It also observed that the McCarran-Ferguson Act, 15 U.S.C. Secs. 1011-1015 (1988), which provides that the business of insurance "shall be subject to the laws of the several States," emphasizes the strong state interest in allowing the state court system to interpret its laws and apply them in light of federal legislation and the Constitution.
 
 
 12
 On appeal, Alleghany asserts that federal abstention is improper under the circumstances of this case because the controversy, which involves ten states claiming the right to regulate the same securities transaction, has a unique interstate character. According to Alleghany, no single state has an interest which is sufficiently strong to require a federal court to abdicate its jurisdiction. Alleghany also urges that abstention is improper under the law of this circuit when the federal action involves commerce or supremacy clause challenges to a state statute. In addition, it contests the district court's finding that no state administrative or judicial proceeding was pending in state court, and contends that Younger abstention is improper where the state proceeding is not an enforcement action. Finally, it argues that Burford abstention is also inappropriate in this case.
 
 II.
 
 13
 We begin our analysis by recognizing that "federal courts have a 'virtually unflagging obligation' to exercise their jurisdiction." Deakins v. Monaghan, 484 U.S. 193, 206, 108 S.Ct. 523, 530, 98 L.Ed.2d 529 (1988) (quoting Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976)). This exercise of jurisdiction is constrained, however, by traditional principles of equity, comity, and federalism. Younger v. Harris, 401 U.S. 37, 44, 91 S.Ct. 746, 750, 27 L.Ed.2d 669 (1971). Younger abstention promotes the interests of both state and federal governments. As the Court announced in Younger, "[T]he National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States." Id. Younger abstention is also founded, in part, on the principle that "the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." Id. In response to these concerns, the Younger Court held that, except in extraordinary circumstances, federal courts should not enjoin pending state criminal prosecutions. Id. at 54, 91 S.Ct. at 755.
 
 
 14
 Following Younger v. Harris, the Supreme Court extended the Younger doctrine to noncriminal state court proceedings, including administrative proceedings, if: (1) there is an ongoing state judicial proceeding; (2) important state interests are implicated; and (3) there is an adequate opportunity to raise constitutional challenges in the state proceedings. Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982).
 
 
 15
 Since Middlesex, the Court has reaffirmed the applicability of Younger to administrative proceedings in which "important state interests are vindicated, so long as in the course of those proceedings the federal plaintiff would have a full and fair opportunity to litigate his constitutional claim." Ohio Civil Rights Comm'n v. Dayton Christian Schools, 477 U.S. 619, 627, 106 S.Ct. 2718, 2723, 91 L.Ed.2d 512 (1986). In Dayton Christian Schools, the school brought an action in federal district court to enjoin a pending administrative proceeding brought against the school by the Ohio Civil Rights Commission. The school argued that the Commission's initiation of the administrative proceeding violated its rights under the free exercise and establishment clauses of the first amendment. On appeal, the Supreme Court held that the district court should have abstained from hearing the case under the Younger doctrine. Id. at 628, 106 S.Ct. at 2723. The Court found it unnecessary to decide whether the administrative proceedings in issue provided the opportunity to raise constitutional challenges. The Court declared that "it is sufficient under [Middlesex ] that constitutional claims may be raised in state-court judicial review of the administrative proceeding." Id. at 629, 106 S.Ct. at 2724 (citation omitted).
 
 
 16
 In the instant case, the district court noted the extension of the Younger doctrine to administrative proceedings, and then applied the test announced by the Middlesex Court. The district court first examined whether there was an ongoing judicial proceeding, as required by Middlesex. Judicial review of the action of the Director was available under the Nebraska Administrative Procedure Act. Under the Act, the reviewing court hears the appeal without a jury on the record of the agency. The district court found that the Director had statutory authority similar to that of the State Board of Education, which had been determined to be quasi-judicial in nature and therefore subject to appeal. The court then concluded that the Nebraska action was an ongoing judicial proceeding.
 
 
 17
 We agree with this conclusion, which is also supported by the recent Supreme Court opinion in New Orleans Public Service, Inc. v. Council of City of New Orleans, --- U.S. ----, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) (NOPSI ). In NOPSI, the Court extensively discussed the definition of "judicial proceeding" by analyzing the distinction between a judicial and a legislative act:
 
 
 18
 A judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist. That is its purpose and end. Legislation on the other hand looks to the future and changes existing conditions by making a new rule to be applied thereafter to all or some part of those subject to its power.
 
 
 19
 Id. at 2519 (quoting Prentis v. Atlantic Coast Line Co., 211 U.S. 210, 226, 29 S.Ct. 67, 69, 53 L.Ed. 150 (1908)).
 
 
 20
 After applying this analysis to the facts of this case, we conclude that the administrative proceeding was "judicial in nature." The Director of Insurance investigated the facts surrounding Alleghany's proposed acquisition, and based on this fact-intensive inquiry, refused to permit the acquisition because of prejudice to St. Paul Property and Casualty policyholders. This declaration was based on existing facts, relating only to Alleghany and St. Paul Property and Casualty, and existing Nebraska law, the Nebraska Insurance Companies Holding Act, and did not constitute "the making of a rule for the future." NOPSI, 109 S.Ct. at 2520 (quoting Prentis, 211 U.S. at 226, 29 S.Ct. at 69). Rather, the purpose of the proceeding was to determine whether Alleghany should be permitted to acquire control of a Nebraska domestic insurance company. Thus, the proceeding was a judicial rather than a legislative act.
 
 
 21
 Alleghany asserts that even if the proceeding was judicial in nature, abstention is nevertheless improper because the proceeding is no longer pending. The Supreme Court's holding in Huffman v. Pursue, Ltd., 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), requires that we reject this argument. In Huffman, the operator of a motion picture theater, Pursue, Ltd., sought to challenge the constitutionality of a state public nuisance statute in federal district court after a state trial court found the theater to be in violation of the statute. The Supreme Court held that the district court should have abstained under Younger even though Pursue had chosen to initiate an action in federal court rather than appeal to a state court. The court concluded that "a necessary concomitant of Younger is that a party ... must exhaust his state appellate remedies before seeking relief in the District Court, unless he can bring himself within one of the exceptions specified in Younger." Id. at 608, 95 S.Ct. at 1210. Since Huffman, courts have consistently held that a party cannot avoid Younger by choosing not to pursue available state appellate remedies. See Pennzoil Co. v. Texaco, 481 U.S. 1, 16-17, 107 S.Ct. 1519, 1529-30, 95 L.Ed.2d 1 (1987); Coley v. Clinton, 635 F.2d 1364, 1371 (8th Cir.1980). NOPSI also sheds light on this issue. The Court stated that it had never squarely faced the question of the applicability of the exhaustion requirement to completed administrative proceedings, but assumed that the exhaustion requirement would apply to both continuing and final administrative proceedings.[3] The Court noted that Dayton Christian Schools suggests that "an administrative proceeding to which Younger applies cannot be challenged in federal court even after the administrative action has become final." NOPSI, 109 S.Ct. at 2518 n. 4.
 
 
 22
 The district court found, and we agree, that the Nebraska proceedings implicated important state interests, as required by Middlesex. The court pointed to Nebraska's interest in the status of insurance competition in the state, the financial condition and competence of an acquiring company, and the acquiring company's plans for operation. Nebraska's interest in the availability of health care is also implicated because St. Paul Property and Casualty provides the professional liability insurance coverage for over 70% of Nebraska's physicians and hospitals. Changes in operations made by Alleghany, if permitted to acquire St. Paul Property and Casualty, could have significant implications for health care in Nebraska.
 
 
 23
 Finally, as the district court found, Alleghany had an adequate opportunity to raise its constitutional challenges in Nebraska state courts, as required by Middlesex. Nebraska law authorizes its courts to hear constitutional claims in reviewing administrative action. Neb.Rev.Stat. Sec. 84-917(6)(a). Accordingly, the court found all three Middlesex requirements had been established.
 
 
 24
 Alleghany argues that abstention is improper here because of the inherently interstate nature of the proposed transaction. This argument mischaracterizes the nature of the Younger inquiry. The NOPSI Court observed that Younger does not focus on the results of a particular state proceeding but rather on the overall importance of the proceedings to the state. NOPSI, 109 S.Ct. at 2516. Thus, the significant issue here is not whether Nebraska has a substantial, legitimate interest in regulating Alleghany's proposed acquisition of a Minnesota corporation or in exercising veto power over the acquisition in other states. Rather, the proper inquiry is whether Nebraska has a substantial, legitimate interest in regulating its domestic insurance companies. This inquiry is answered by reference to the McCarran-Ferguson Act, 15 U.S.C. Secs. 1011-1015, in which Congress recognized the right of states to act in protection of policyholders of domestic insurers.
 
 
 25
 Alleghany also asserts that the district court prejudged the merits of its preemption and commerce clause claims because of the court's discussion of the state interest evidenced by the McCarran-Ferguson Act. We believe the district court was simply emphasizing the state's strong interest in the business of insurance. Since this is one of the three issues in Middlesex, the court did not err in considering the state's interest.
 
 
 26
 We also reject Alleghany's argument that certain of our decisions in the public utility area, Arkansas Power & Light Co. v. Missouri Pub. Serv. Comm'n, 829 F.2d 1444 (8th Cir.1987); Southwestern Bell Tel. Co. v. Arkansas Pub. Serv. Comm'n, 824 F.2d 672 (8th Cir.1987), cert. denied, 485 U.S. 989, 108 S.Ct. 1293, 99 L.Ed.2d 503 (1988); Middle South Energy v. Arkansas Pub. Serv. Comm'n, 772 F.2d 404 (8th Cir.1985), cert. denied, 474 U.S. 1102, 106 S.Ct. 884, 88 L.Ed.2d 919 (1986), stand for the proposition that Younger abstention is inappropriate if a party claims that state proceedings are preempted by the Constitution or federal statute. Those cases simply do not support such a broad assertion. They involved a pervasive federal regulatory scheme which indicated a strong federal interest. In contrast, this case involves insurance, an area of regulation delegated to the states by Congress. In addition, any remaining viability to Alleghany's preemption argument is extinguished by the recent NOPSI decision.[4]
 
 
 27
 Furthermore, we find no merit in Alleghany's argument that Younger abstention applies only where there is a pending state enforcement proceeding. In Pennzoil Co. v. Texaco, 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987), the Supreme Court held that the Younger doctrine required a federal district court to abstain from intervening in a state proceeding between two private parties. Id. at 14, 107 S.Ct. at 1527. This holding broadens the applicability of Younger abstention beyond state enforcement proceedings.
 
 III.
 
 28
 As recognized by the district court, this decision is guided by the Supreme Court's pronouncements refining the doctrine which originated in Younger v. Harris. The Court has held that Younger abstention applies to state administrative proceedings, see, e.g., Middlesex, and that appellate processes must be exhausted before a party such as Alleghany can seek relief in federal court, see Huffman. In Dayton Christian Schools, the Court held that it is sufficient under Middlesex that constitutional claims can be raised in state judicial review of the administrative proceedings. These decisions lead to the conclusion that abstention under Younger is appropriate on the facts of this case. The language we have set forth from the recently decided NOPSI case underscores the significance of the district court's reasoning and supports the decision there reached.
 
 
 29
 Numerous Supreme Court decisions discuss in depth the disruption caused by federal court intervention in ongoing state court proceedings. We hold that Younger abstention is appropriate here in order to avoid such disruption. The district court did not reach the issue of Burford abstention, and it is not necessary that we do so. The judgment of the district court is affirmed.
 
 
 
 *
 The HONORABLE JOHN R. BROWN, Senior Circuit Judge for the United States Court of Appeals for the Fifth Circuit, sitting by designation
 
 
 [1]
 The Honorable Warren K. Urbom, United States District Judge for the District of Nebraska
 
 
 [2]
 California, Minnesota, New York, and Texas approved; Indiana, Nebraska, North Dakota, and Wisconsin denied approval. The four states giving approval granted it only for acquiring up to 20% of the shares and required additional approval for further acquisitions. Alleghany brought federal court actions in Indiana, Nebraska, North Dakota, and Wisconsin, and a motion was made in each case to dismiss on the grounds of abstention. The district court for the Western District of Wisconsin granted the motion, and district courts in Indiana and North Dakota denied the motion in each case
 
 
 [3]
 The concurring opinion of Chief Justice Rehnquist underscores this principle by stating that nothing in the Court's opinion "alter[s] our prior case law indicating that such proceedings [administrative proceedings which are judicial in nature] should be regarded as 'ongoing' for the purposes of Younger abstention until state appellate review is completed." NOPSI, 109 S.Ct. at 2521 (Rehnquist, C.J., concurring). Also, the concurring opinion of Justice Blackmun indicates that he believes that a completed administrative proceeding constitutes an ongoing proceeding for Younger purposes. See id. (Blackmun, J., concurring)
 
 
 [4]
 The court stated:
 There is no greater federal interest in enforcing the supremacy of federal statutes than in enforcing the supremacy of explicit constitutional guaranties, and constitutional challenges to state action, no less than pre-emption-based challenges call into question the legitimacy of the State's interest in its proceedings reviewing or enforcing that action.
 NOPSI, 109 S.Ct. at 2516.