**AMERICAN INSTITUTE OF FOOT MEDICINE, etc., et al.**

**v.**

**NEW JERSEY STATE BOARD OF MEDICAL EXAMINERS, etc., et al.**

Civ. A. No. 92–4505.

United States District Court, D. New Jersey.

Dec. 3, 1992.

Joseph Albano, Michael E. Quiat, Uscher, Quiat, Uscher & Strull, Hackensack, NJ, for plaintiffs.

Andrea M. Silkowitz, Asst. Atty. Gen., Brenda Talbot Lewis, Deputy Atty. Gen., Robert J. Del Tufo, Atty. Gen. of N.J., Div. of Law, Newark, NJ, for defendants.

POLITAN, District Judge.

This matter comes before the court on plaintiffs American Institute of Foot Medicine's a/k/a American Podiatric Medical Specialties Board's ("AIFM/APMSB") and nine of its individual members' application for a preliminary injunction. The defendant in this action is the New Jersey Board of Medical Examiners (the "Board").[1] The Board opposed the application for a preliminary injunction and requested this court to abstain from exercising its jurisdiction and to dismiss plaintiffs' complaint. For the reasons outlined below this court will abstain from deciding the merits of plaintiffs' case and will STAY this action pending the Supreme Court of New Jersey's review of N.J.A.C. 13:35–6.10(m). Accordingly, plaintiffs' application for a preliminary injunction is DENIED.

The facts underlying plaintiffs' application are relatively simple. The Board is a professional licensing agency and regulating body of the State of New Jersey, Division of Consumer Affairs, New Jersey Department of Law and Public Safety. On June 19, 1989, the Board promulgated a new regulation which provided:

> Any licensee advertising Board Certification in a specialty must possess certification by a certifying agency recognized by the Board of Medical Examiners. A list of recognized agencies shall be maintained by the Board.

---

1. Dr. Harvey Rotor, a licensed podiatrist in the State of New Jersey and member of the New Jersey Board of Medical Examiners, was also named as a defendant in this case. It was brought to the attention of the court at oral argument that Dr. Rotor was never served by the plaintiffs. Thus, Dr. Rotor is not a party to the motion before me.

N.J.A.C. 13:35–6.10(m) ("Regulation M"). The Board voted in a June 13, 1990 meeting to recognize for purposes of Regulation M those specialty boards recognized by the American Medical Association ("AMA"), the American Osteopathic Association ("AOA") and the American Podiatric Medical Association ("APMA"). These organizations were recognized because the Board was already well-acquainted with the standards of those associations and/or their certifying bodies. The Board further indicated at the June 13, 1990 meeting that it would accept requests from additional certifying agencies not recognized by the AMA, AOA or APMA. On November 14, 1990 the Board voted to approve the following as the Board's policy regarding recognition of additional certifying agencies:

> The Board should adopt the standards of the American Board of Medical Specialties, the American Osteopathic Association and the American Podiatric Medical Association as the acceptable standards to be met by certifying Boards in the respective professions. If the applying organization is able to demonstrate that it meets the objective standards established by those recognized bodies for consideration of accreditation, the New Jersey Medical Board should then ask that the examination administered by the proposed certifying organization be submitted to it for review. The graduate experience by the certifying organization must be defined by the organization and submitted to the Board. The Credentials Committee [of the Board] should review that information from the certifying organization and should make a recommendation to the Board on the acceptability of the organization.

Prior to the enactment of Regulation M, the individual plaintiffs and other New Jersey podiatric licensees who were members of AIFM/APMSB were able to advertise Board Certification status in New Jersey based upon their membership in AIFM/APMSB. Because AIFM/APMSB was not one of the bodies recognized by the Board, however, after the enactment of Regula-

tion M, AIFM/APMSB applied to the Board for recognition of its Board Certification credentials. In its application, AIFM/APMSB also sought to obtain permission from the Board to continue to advertise its Board Certification credentials pending a final decision by the Board on its application for recognition under Regulation M. That preliminary request was denied by the Board on April 30, 1990 and plaintiff AIFM/APMSB and the individual plaintiffs were precluded from advertising their Board Certification status from that point forward.

Upon its review of the submissions of AIFM/APMSB, testimony before the Credentials Committee of the Board, and the various reports before it, the Board determined that AIFM/APMSB had not demonstrated a sufficient basis for recognition by the Board and the request was denied. A formal letter was filed by the Board on October 2, 1992 [2] explaining the reasons for the denial.

On October 28, 1992 plaintiffs filed a complaint in the federal district court alleging that the action of the Board has denied plaintiffs their right to advertise truthful information in violation of the First Amendment of the United States Constitution; that Regulation M is unconstitutional on its face in violation of the First Amendment of the United States Constitution; that the Board has denied plaintiffs Equal Protection of the laws under the Fourteenth Amendment of the United States Constitution; that the Board acting under color of state law in denying plaintiffs their constitutional rights has violated 42 U.S.C. § 1983, *et seq.;* and that the Board has denied plaintiffs their constitutional rights to advertise truthful information consistent with the New Jersey State Constitution, N.J. Const. art. 1, par. 6 and to equal protection of the laws under N.J. Const. art. 1, par. 1.

As relief, plaintiffs request that this court enjoin the Board from enforcing Regulation M against plaintiffs, render Regula-

---

2. I note that the letter from the Board indicates that it was filed on October 2, 1992. However, the Affidavit of Michael E. Quiat clarifies that the envelope in which the final decision was mailed was in fact postmarked "October 27, 1992".

tion M null and void as unconstitutional based upon any of the aforementioned constitutional grounds and order that plaintiffs and all others similarly situated be able to commence the advertisement of their Board Certification. Defendant argues that this court should abstain from exercising its jurisdiction and plaintiffs' complaint therefore should be dismissed.

■ I begin by recognizing that "federal courts have a 'virtually unflagging obligation' to exercise their jurisdiction." *Deakins v. Monaghan*, 484 U.S. 193, 108 S.Ct. 523, 98 L.Ed.2d 529 (1988). However, "[w]here questions under both state law and the federal constitution are present, the policies of promoting comity with the state courts and ensuring the smooth functioning of the federal judiciary counsel the federal courts to stay their hands, at least initially." *Hughes v. Lipscher*, 906 F.2d 961, 964 (3rd Cir.1990) (citing *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941)).

*Pullman* abstention is generally "appropriate where the state court's resolution of an unsettled question of state law may moot or change the analysis of the federal constitutional issue." *Hughes*, 906 F.2d at 964; *Georgevich v. Strauss*, 772 F.2d 1078, 1089 (3d Cir.1985) (*in banc*) *cert. denied*, 475 U.S. 1028, 106 S.Ct. 1229, 89 L.Ed.2d 339 (1986). The application of abstention is equitable in nature and is thus within the court's discretion. *Hughes*, 906 F.2d at 964. The Third Circuit has identified three prerequisites to the application of *Pullman* abstention:

(1) Uncertain issues of state law underlying the federal constitutional claims brought in the district court;

(2) Amenability of the state law issues to a state court interpretation that would obviate the need for, or substantially narrow, adjudication of the federal claims;

(3) Disruption of important state policies through a federal court's erroneous construction of state law.

*Id.* and cases cited therein. "When these elements are present, the court must next determine whether abstention is appropriate, considering such factors as the availability of an adequate state remedy, the length of time the litigation has been pending, and the potential impact on the parties from the delay in seeking a state ruling." *Id.*

The first of the three prerequisites to *Pullman* abstention regards the uncertainty of the underlying state law. In this case it is clear that several state law issues remain unsettled. Specifically, the New Jersey Supreme Court has never interpreted nor addressed Regulation M. Also, Regulation M's validity could be challenged as *ultra vires*. Additionally, Regulation M's practical application remains an unsettled issue of state law. *See Hughes*, 906 F.2d at 966. In fact, the parties dispute the Board's final determination that AIFM/APMSB's certifying criteria was insufficient to warrant recognition. (*See* Quiat Reply Aff. ¶ 8 (stating assertions set forth in Board's decision are "blatant misstatements of the facts")). Accordingly, the first prerequisite is established.

Second, I am satisfied that Regulation M and the supplementary policy statement of the Board setting forth the standards by which recognition will be evaluated are "obviously susceptible" to an interpretation and application by the state court that would avoid altogether consideration of the federal issues. Specifically, the state court should be given the opportunity to address the issue of how a certifying agency can become "recognized" by the Board and how those standards were interpreted and applied in the instant case. A state court determination that the announced standards were inadequate or were misapplied in this case would moot plaintiffs' claim that they are being denied their First Amendment rights. Also, the New Jersey courts have not interpreted the key words of Regulation M, namely what is a "specialty" and how one becomes "recognized by" the Board. *Cf. Chez Sez III Corp. v. Township of Union*, 945 F.2d 628 (3rd Cir. 1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1265, 117 L.Ed.2d 493 (1992). Moreover, I note that plaintiffs have raised claims that Regulation M and the Board's action violate the New Jersey Constitution. Such adjudication by the state court regarding the validity of the regulation under the

state constitution may obviate the need for review of plaintiffs' federal claims. *See Hughes,* 906 F.2d at 966. Thus, the second prerequisite is satisfied.

Third, an erroneous interpretation of the regulation by the federal courts would undoubtedly have a disruptive effect on an important state policy. There is an overwhelming state interest in ensuring the safe delivery of medical care to consumers in the state. As is the case in all professional advertising situations, the state has a genuine and important interest in assuring consumers that they may rely on advertising approved by the state Board of Medical Examiners. Moreover, the regulation of physician advertising is inextricably intertwined with the regulation of ethics and practice in general in the medical profession. "It is difficult to imagine a state interest more important than the protection of citizens against the harms of unethical or incompetent practitioners of the healing arts." *Phillips v. Virginia Bd. of Medicine,* 749 F.Supp. 715, 722–23 (E.D.Va. 1990). Thus, the third and final circumstance for *Pullman* abstention has been met.

Next I must consider whether equitable factors weigh against abstention. *Hughes,* 906 F.2d at 966. I first note in this regard, that although plaintiffs have not as yet appealed the Board's denial, judicial review of that denial is available under New Jersey law. In 1948, the New Jersey Supreme Court adopted rules to facilitate challenges to administrative action providing for appeal of a state administrative agency determination to the Appellate Division. *See Central R.R. Co. v. Neeld,* 26 N.J. 172, 184–85, 139 A.2d 110 (1958). Rule 2:2–3(a) provides that appeals may be taken to the Appellate Division as of right:

> (2) to review final decisions or actions of any state administrative agency or officer, and to review the validity of any rule promulgated by such agency or officer.

R. 2:2–3(a)(2). At oral argument the parties informed the court that the time in which plaintiffs must appeal has not yet expired and will not expire until December 11, 1992. Given that their right to appeal has not expired and that state courts are as competent as federal courts in adjudicating federal constitutional claims, it is abundantly clear that a viable state court remedy exists for these plaintiffs. Thus, no prejudice to plaintiffs will result from this court's decision to abstain.

Moreover, in light of the lack of prejudice to the plaintiffs in abstaining, the principle of comity must be considered. "State courts shoulder the overwhelming bulk of litigation in this country and must be free of inappropriate interference in their internal operations if they are to perform their tasks efficiently." *Hughes,* 906 F.2d at 967. I have substantial doubt as to the position the New Jersey state courts would take in interpreting Regulation M and the articulated standards for recognition and in applying them in this instance. I conclude that the stated goal of *Pullman,* "furthering the harmonious relation between state and federal authority," *Pullman,* 312 U.S. at 501, 61 S.Ct. at 645, would be substantially hampered by undue federal intrusion in this case.

In sum, the prerequisites to *Pullman* abstention having been established and the equities having been considered, I conclude that the issues in this case warrant abstention from the exercise of federal jurisdiction based upon the *Pullman* abstention doctrine.

■ Alternatively, I base my decision to abstain on the doctrine of *Younger* abstention.[3] *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). In accordance with the *Younger* doctrine, the exercise of this court's jurisdiction is constrained by traditional principles of equity,

---

**3.** The court recognizes that the procedural posture of a case will determine which abstention doctrine is appropriate. *See Ivy Club v. Edwards,* 943 F.2d 270, 280 (3rd Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 1282, 117 L.Ed.2d 507 (1992). Based upon this court's conclusion that the *Pullman* prerequisites have been satisfied and the indefiniteness of whether

the procedural posture of this case presents an ongoing proceeding for *Younger* abstention purposes, *see infra* at 1174–75, this court has decided to place primary reliance for its decision to abstain on the *Pullman* abstention doctrine. The applicability of *Younger* abstention, however, has been analyzed as an alternative ground for abstaining.

comity, and federalism. *See Gwynedd Properties, Inc. v. Lower Gwynedd Tp.,* 970 F.2d 1195, 1199 (3rd Cir.1992); *Alleghany Corp. v. McCartney,* 896 F.2d 1138, 1142 (8th Cir.1990) (citing *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)). *Younger* abstention promotes the interest of both the state and federal governments. *Alleghany Corp.,* 896 F.2d at 1142. The Court in *Younger* provided that "the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States." *Younger,* 401 U.S. at 44, 91 S.Ct. at 750–51. *Younger* abstention is also premised, in part, on the notion that "the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Id.*

Although *Younger* involved state court criminal proceedings, the Supreme Court subsequently extended *Younger* abstention to noncriminal state court proceedings, including administrative proceedings. *See Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982). In *Middlesex,* the Court enunciated three requirements for *Younger* abstention to be appropriate: (1) the existence of ongoing state judicial proceedings; (2) important state interests are implicated; and (3) there is an adequate opportunity to raise constitutional challenges in the state proceedings. *Id.* at 432, 102 S.Ct. at 2521. In *Ohio Civil Rights Comm'n v. Dayton Christian Schools,* 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986), the Court reaffirmed the applicability of *Younger* to administrative proceedings in which "important state interests are vindicated, so long as in the course of those proceedings the federal plaintiff would have a full and fair opportunity to litigate his constitutional claim." *Id.* at 627, 106 S.Ct. at 2723. With these requirements in mind, I address the appropriateness of *Younger* abstention in the instant case.

First, I consider whether the requirement of an ongoing judicial proceeding is present under the facts of this case. In *New Orleans Public Service, Inc. v. Council of City of New Orleans,* 491 U.S. 350, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989), the Supreme Court addressed the meaning of a "judicial proceeding" by analyzing the difference between a judicial and a legislative act:

> A judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist. That is its purpose and end. Legislation on the other hand looks to the future and changes existing conditions by making a new rule to be applied thereafter to all or some part of those subject to its power.

*Id.* at 370–71, 109 S.Ct. at 2519. I am satisfied that the administrative proceeding wherein it was determined whether AIFM/APMSB should be permitted to advertise as "Board Certified" was judicial in nature. The Board specifically investigated the requirements of AIFM/APMSB membership and determined based upon those existing facts that AIFM/APMSB did not satisfy the requirements necessary to be recognized by the Board for advertising purposes. The proceeding before the Board adjudicated the rights of AIFM/APMSB based upon existing facts and was therefore judicial in nature.

In addition to being judicial in nature the state proceeding must be "ongoing". I repeat in this regard, that plaintiffs have not yet exhausted their state court remedies. Pursuant to New Jersey law, plaintiffs have a right to appeal to the Appellate Division final decisions of state agencies. The Supreme Court, however, has not answered the precise question of whether a final administrative determination to which a right of appeal in state court exists constitutes an ongoing proceeding for *Younger* purposes. However, much persuasive authority exists supporting the conclusion that such a situation constitutes an ongoing state proceeding.

The Supreme Court's holding in *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975) supports the conclusion that an ongoing judicial proceeding exists where plaintiffs have not initi-

ated an appeal of the adverse decision from the inferior state court proceeding. In *Huffman*, a state trial court found a motion picture theater to be in violation of a state statute. Instead of appealing the state court decision, the operator of the theater sought to challenge the constitutionality of the statute in federal district court. The *Huffman* court concluded that "a necessary concomitant of *Younger* is that a party ... must exhaust his state appellate remedies before seeking relief in the District Court." *Id.* at 608, 95 S.Ct. at 1210; *see also Pennzoil Co. v. Texaco*, 481 U.S. 1, 16–17, 107 S.Ct. 1519, 1528–29, 95 L.Ed.2d 1 (1987); *Alleghany Corp. v. McCartney*, 896 F.2d at 1144.

Although *Huffman* involved the appeal of a state court decision, in *dicta* in *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 369 n. 4, 109 S.Ct. 2506, 2519 n. 4, 105 L.Ed.2d 298 (1989), the Supreme Court suggested that state administrative-judicial proceedings and related state court appeals should be viewed as one unitary judicial process for purposes of *Younger* abstention. *Phillips v. Virginia Board of Medicine*, 749 F.Supp. 715, 724–25 n. 16 (E.D.Va.1990) (discussing *New Orleans* opinion). The *New Orleans* Court cited the two cases that extended *Younger* to administrative proceedings, *Dayton Christian Schools* and *Middlesex County Ethics Comm.*, in support of its suggestion that *Younger* may be appropriate in the situation where a party has a right to appeal in state court the determination of an administrative proceeding. *New Orleans*, 491 U.S. at 369 n. 4, 109 S.Ct. at 2519 n. 4 (noting that in *Dayton Christian Schools*, the Court offered as an alternative argument, the fact that the "federal challenge could be made upon appeal to the state courts").

In light of the exhaustion theory of *Huffman* combined with the expansion of *Younger* abstention to administrative proceedings in *Middlesex County Ethics* and *Dayton Christian Schools* and the Supreme Court *dicta* in *New Orleans*, this court is persuaded that the facts of this case present an ongoing judicial proceed-

ing. The plaintiffs in this case applied to the Board for recognition. The plaintiffs submitted records for review to the Board and appeared before the Credentials Committee of the Board accompanied by counsel on August 2, 1991. Based upon the August 2, 1991 testimony and the reports submitted by plaintiffs, the Board denied plaintiffs' application. (Letter from Sanford M. Lewis, M.D. Board of Medical Examiners of 10/2/92). Plaintiffs may now either seek reconsideration from the Board or appeal the Board's decision to the New Jersey Appellate Division. I am satisfied that this process taken as a whole wherein plaintiffs have the right to appeal the Board's decision in the New Jersey court system constitutes an ongoing proceeding for *Younger* purposes.

The Eighth Circuit followed similar reasoning in *Alleghany Corp. v. McCartney*, 896 F.2d 1138, 1142 (8th Cir.1990). In *Alleghany*, the court found an ongoing judicial proceeding where the federal plaintiff had a right to appeal to the state court the Nebraska Director of Insurance's denial of his application to engage in certain acquisitions. *Id.* at 1143–44; *Phillips v. Virginia Bd. of Medicine*, 749 F.Supp. 715 (E.D.Va. 1990) (discussing the unsettled interpretation of "ongoing proceedings"). *Cf. Ford Motor Co. v. Insurance Com'r of Com of Penn.*, 874 F.2d 926, 932–33 & n. 10 (3rd Cir.1989) (although finding *Younger* abstention unwarranted, the court recognized that where constitutional claims resulting from administrative proceedings could be reviewed in state court and where the state's interest is readily apparent, *Younger* abstention is not precluded), *cert. denied*, 493 U.S. 969, 110 S.Ct. 418, 107 L.Ed.2d 382 (1989).

Second, I am satisfied that important state interests are implicated by the issues presented in this case. As addressed in my discussion of *Pullman* abstention regarding the implication of an important state policy, in this court's view, regulation of physician advertising is a genuine and important state interest. I repeat my conclu-

sion that it is difficult to imagine an interest more important than regulation of the information received by consumers through advertising which is inextricably intertwined with the regulation of physician ethics and practice. Accordingly, I find that the second requirement for *Younger* abstention has been satisfied.

Finally, there is an adequate opportunity for plaintiffs to raise their constitutional claims in the state court proceedings. As discussed previously, plaintiffs have a right to appeal the Board's decision to the New Jersey Appellate Division. That right to appeal as of yet has not expired. State courts are as competent and able as federal courts to adjudicate federal constitutional claims.

In sum, in the alternative, I base my decision to abstain on the doctrine of *Younger* abstention. The facts of this case present an ongoing judicial proceeding in state court; an important state interest is implicated; and plaintiffs have an adequate opportunity to present their constitutional claims in state court proceedings.

For the reasons outlined above, this action is hereby STAYED pending the Supreme Court of New Jersey's review of Regulation M. At such time as the Supreme Court concludes its review of the regulation governing board certification advertising, this action may be reopened upon application of either party. Accordingly, plaintiffs' application for a preliminary injunction is DENIED.

SO ORDERED: