**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

_____

No. 96-4076
_____

Planned Parenthood of Greater    *
Iowa, Inc. *
                            *
      Plaintiff - Appellee    *
                            *   Appeal from the United States
   v.                      *   District Court for the Southern
                            *   District of Iowa.
Christopher G. Atchison, In his   *
Capacity as the Director of the *
Department of Health of the     *
State of Iowa                *
                            *
      Defendant - Appellant   *

_____

Submitted: June 9, 1997

Filed: September 25, 1997
_____

Before MURPHY and HEANEY, Circuit Judges, and BOGUE,[*] District Judge.
_____

BOGUE, Senior District Judge.

_____

*The HONORABLE ANDREW W. BOGUE, United States District
Judge for the District of South Dakota, sitting by
designation.

This case involves an appeal from an injunction imposed by the district court[1] following a bench trial, enjoining the defendant from requiring the plaintiff to comply with state certificate of need requirements or otherwise obtain a certificate of need in connection with its plans for a new clinic. We affirm.

I.

The plaintiff, Planned Parenthood of Greater Iowa, Inc. (PPI), is a non-profit Iowa corporation which operates 16 clinics in Iowa. Its clinics provide comprehensive family planning and reproductive health care services, including pregnancy diagnosis and counseling, early prenatal care, first and early second trimester pregnancy terminations, birth control counseling, diagnosis and treatment of sexually transmitted diseases and urinary tract infections, and cancer screening. In 1995 the plaintiff announced plans to build and operate a clinic in the Quad Cities area of Iowa and Illinois. Upon learning of the plaintiff's plans, some individuals and organizations opposed to abortions held meetings and rallies in an effort to thwart the plaintiff's plans for the clinic. Certain members of the opposition groups concentrated their efforts on bringing their cause to the attention of various members of the Iowa state legislature, the Governor's office, and the Iowa Department of Health. One of the stated goals of the opposition was to convince state officials to require the plaintiff to comply with state certificate of need procedures before allowing the plaintiffs to construct its proposed clinic.

In 1977 the Iowa General Assembly enacted the certificate of need (CON) statutes to regulate the development of new or changed

---

[1]The Honorable Charles R. Wolle, United States District Judge for the Central Division of the Southern District of Iowa.

-2-

institutional health services in that state. *See*, 1977 Iowa Acts, ch. 75. The CON process is a regulatory framework designed to ensure "that the offering or development of new institutional health services be accomplished in a manner which is orderly, economical and consistent with a goal of providing necessary and adequate institutional health services to all the people of [Iowa] while avoiding unnecessary duplication of institutional health services and preventing or controlling the cost of delivering these services." Id.  To this end, Iowa law prohibits the offering or development of any new or changed institutional health service "without prior application to the [Department of Health] for and receipt of a certificate of need . . . ." Iowa Code § 135.63(1)(1995).  To commence the CON process, the sponsor of a project must first submit a "letter of intent" to the Department of Health (Department) giving a brief description of the proposed project. Iowa Code § 135.65; Iowa Admin. Code r. 641-202.2(1).  Not less than 60 days thereafter, the sponsor may submit an application for a CON, pay a fee, and thereby commence a formal review of the application. Iowa Code § 135.65; Iowa Admin. Code r. 641-202.  CON applications are reviewed by the Health Facilities Council (Council) which is housed within the offices of the Department and whose members are appointed by the Governor.  The decision to grant or deny a CON is made by the Council.  The defendant, Christopher G. Atchison, was sued in his official capacity as the Director of the Iowa Department of Health.  He was not a member of the Council.

The plaintiff alleges that only in response to the pressures exerted by the opposition groups, and for the sole purpose of blocking construction of a clinic that would provide pregnancy termination services, the Department began a campaign to delay or derail plans for the plaintiff's proposed clinic, by requiring the plaintiff to undergo the CON process. This was so, despite that in

the ten years prior to this case, no similarly structured health care facility which opened in the state was made to apply for a certificate of need.

On November 15, 1995, Barb Nervig, the Department employee in charge of the CON program, sent a letter to the plaintiff stating it had come to the attention of the Department that the plaintiff was planning to construct a new clinic in Davenport, Iowa. The express purpose of the letter was to inform the plaintiff of the CON process and to alert it that its project may be subject to review under the CON regulations. After no response was forthcoming and at defendant Atchison's direction, on January 9, 1996, Nervig sent another letter to the plaintiff requesting information about its proposed clinic so that a "determination of reviewability under Certificate of Need" could be made. In response to this letter, on March 11, 1997 special counsel to the plaintiff sent a letter to the Department detailing its proposed clinic and requesting a "reviewability determination" from the Department. On April 8, the Department returned a letter to the plaintiff indicating that its proposed project was reviewable under the CON statute. Nine days later the plaintiff filed this action, pursuant to 42 U.S.C. § 1983, seeking a declaratory judgment that the defendant's reviewability determination unconstitutionally burdened potential patients' privacy rights because it was made for the purpose of, and would have the effect of, imposing an obstacle on access to abortion. The defendants moved the district court to dismiss and abstain from exercising jurisdiction over the matter pursuant to Younger v. Harris, 401 U.S. 37 (1971). The district court denied the motion, and after a one-day court trial, enjoined the defendants from requiring the plaintiff to comply with the CON requirements. This appeal followed.

II.

In issuing its ruling, the district made a number of findings of fact and conclusions of law which, for purposes of brevity, are only summarized herein. There are approximately 140,000 women of child bearing age in the Quad Cities area, and from this group approximately 125 women per month seek abortions. Thirty percent of the clinic's services would be devoted to offering pregnancy termination services, which services would not otherwise be available anywhere within 50 miles of the Quad Cities. Some of the opponents to the clinic organized and conducted public rallies in their campaign to impede PPI's proposed construction. The Governor of Iowa, who is opposed to abortion, spoke at one of these rallies in support of the opponents' cause.

Although the Governor's office normally communicated with the Department through a designated liaison, in this matter, the Governor's Chief-of-State and spokesman, Bob Rafferty, communicated directly with the defendant Atchison regarding the issue of PPI and the certificate of need. The Department's Deputy Director, David Fries, took charge of the matter. After the Department's January 9 letter to PPI but before PPI's response, Fries took the unprecedented step of convening a four-member special team to address PPI's plans. Following PPI's response to the Department's letters, and while the team's discussions of PPI's request for a reviewability determination were taking place, members of the opposition groups contacted Rafferty to express concerns about how the matter was being handled. Rafferty in turn contacted Atchison to discuss the process by which plaintiff's letter was being reviewed. Thereafter, the Department of Health informed plaintiff that its project was reviewable under the CON law, notwithstanding that the team was made aware that CON had not been applied to any family planning clinics constructed in the prior ten years. The

April 8 letter was drafted by Nervig, submitted by Fries to Atchison, and a copy was provided to Rafferty after Atchison approved the final draft.[2]

The team concluded PPI's proposed clinic was reviewable because it was a new "institutional health facility" subject to CON reviewability insofar as it was an "organized outpatient facility." Iowa Code § 135.61(14)(d). An organized outpatient facility is further defined as ". . . a facility, not part of a hospital, organized and operated to provide health care to noninstitutionalized and nonhomebound persons on an outpatient basis . . . ." Iowa Code § 135.61(2). The code, however, exempts from CON, those ". . . private offices or clinics of individual physicians, dentists or other practitioners, or groups of practitioners, who are health care providers . . . ." Id. The court found that in the several years prior to this case, the delivery of health care in Iowa has undergone considerable change. Among the most significant aspects of that change is the delivery of primary physician care through clinics structured as businesses that are not owned or controlled by physicians, but that employ or contract with physicians. PPI's proposed clinic would be so structured. That is, the clinic would be owned by the corporation, PPI, which would in turn contract with non-owner physicians to deliver health care services to the clinic's patients.

With the emergence of this new mode of health care delivery, the Department was faced with applying outdated statutes to a health care delivery system not contemplated by those statutes.

_____

[2]This was the first time that Atchison, Fries, and special team member Mike Marshall, an executive officer within the Department, had ever been involved with a CON reviewability determination--an inquiry which, in the past, was normally conducted by Nervig and her predecessor Leona Riggenburg.

Thus, the practice of the department in the several years prior to this case was to construe the physician-controlled office/clinic exception to CON reviewability as broadly as possible in order to exclude from reviewability the outpatient clinics, such as PPI's, that characterize the new mode of primary physician health care delivery. If a new proposed facility was available for use by qualified physicians seeking "access," then the facility was viewed as an organized facility subject to review. If the facility was not open in this sense, but was instead closed to all physicians except those the facility chose to employ or contract with, then it was viewed as a clinic of physicians or a group of health care practitioners, and not subject to review. Alternatively, if a proposed facility provided services by or under the supervision of a physician, and the services were of the same type as were historically available in a private physician's office, then the facility was not subject to review under the CON statutes. As a result of this interpretation of the statute, in the ten years preceding this case, no similarly structured outpatient clinic had been required to obtain a certificate of need before opening for business. Indeed, other clinics providing essentially the same services as PPI, but not pregnancy termination services, were exempted from CON review by the Department's interpretation of the physician-controlled office/clinic exception.

The district court further found, based on past practice, the defendant would not have required the plaintiff to satisfy CON requirements if Rafferty had not contacted him in response to his contacts from members of the groups opposed to abortion. "Without question the defendant would not have required the plaintiff to satisfy CON requirements if the plaintiff's intention had been to provide family planning and related services but not a medical doctor performing abortions." Atchison was influenced by Rafferty's contacts into requiring the plaintiff to satisfy CON

requirements, thinking that Rafferty wanted CON requirements satisfied. Although Rafferty testified he thought a decision about applying CON laws should be based on past practices, the district court concluded if Atchison had understood that to be Rafferty's position, Atchison would not have required PPI to satisfy CON requirements.

The court concluded further that the defendant had not demonstrated the State has a substantial interest in requiring PPI to satisfy CON requirements. Moreover, defendant's attempt to apply the CON requirement did not withstand scrutiny under administrative precedents inasmuch as he did not adequately justify his reasons for deviating from past reviewability determinations. The court ultimately concluded that the defendant's reviewability determination substantially and unconstitutionally obstructed access to abortions.

III.

Defendant's principal argument on appeal is that the federal district court should have abstained pending completion of the CON process before the Iowa Health Facilities Council, and appeals therefrom within the state system pursuant to the principles set fourth in Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d. 669 (1971). We review the district court's abstention decisions under the Younger principles for an abuse of discretion. Fuller v. Ulland, 76 F.3d 957 (8th Cir. 1996).

In Younger, the Supreme Court held, in the absence of extraordinary circumstances, the doctrine of abstention precludes injunctive relief against enforcement of a state criminal statute by a federal court, when state court proceedings relative to that enforcement are pending. Younger, 401 U.S. at 54, 91 S.Ct. at 755.

Abstention is based largely upon principles of federalism and comity which include:

> a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways . . . . [This concept represents] a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States.

Younger, 401 U.S. at 44, 91 S.Ct. at 750; Alleghany Corp. v. McCartney, 896 F.2d 1138, 1142 (8th Cir. 1990). Following Younger, the Supreme Court extended the doctrine to those non-criminal state court proceedings, including administrative proceedings, where: (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims. Middlesex Ethics Committee v. Garden State Bar Association, 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982). The defendant maintains that all three of the Middlesex criteria are met, and that abstention was therefore required. The plaintiff, on the other hand, argues the district court properly refused to abstain because at the time this suit was filed in federal court, there were no ongoing state proceedings that were judicial in nature. We agree.

As noted, pursuant to Iowa law, the sponsor of a proposed new institutional health service is required to submit a "letter of intent" to the Department briefly describing its proposed project. Iowa Code § 135.65(1). Once the letter of intent is received by the Department, the sponsor may then, after 60 days, submit a

formal application, pay a fee, and, if the application is accepted by the Department, thereby commence a "formal review" of the application. Iowa Code § 135.66(3). A formal review, at a minimum, consists of evaluation of the application against the numerous criteria specified in § 135.64 and a public hearing held by the Council to afford any affected persons the opportunity to present testimony relative to the proposed project. Iowa Code § 135.66(3) & (4).

In response to the Department's letters requesting information regarding its project, the plaintiff here supplied the requested information and in turn submitted a request for a "reviewability determination" from the Department. The defendant characterizes this request as the "letter of intent" necessary to begin the CON application process. Thus, the defendant argues, state proceedings were underway when the plaintiff filed this suit. We do not agree and conclude there was no administrative proceeding of a kind subject to <u>Younger</u> that were "ongoing" within the meaning of <u>Younger</u> when the plaintiff filed its § 1983 action in federal court.

Generally, a plaintiff need not exhaust administrative remedies before seeking federal court relief pursuant to 42 U.S.C. § 1983. <u>Patsy v. Board of Regents</u>, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). The Supreme Court has suggested, however, that application of <u>Younger</u> abstention in a § 1983 action is proper where administrative proceedings are coercive, begin before any substantial advancement in the federal action takes place, and involve an important state interest. <u>Ohio Civil rights Commission v. Dayton Christian Schools, Inc.</u>, 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986). Here, the plaintiff was not yet subject to coercive proceedings, and the CON administrative proceedings had not yet begun in earnest before the plaintiff filed in federal

-10-

court. Although the Department contacted the plaintiff and requested information relative to the plaintiff's proposed project, such contact, standing alone, is not sufficient to commence CON proceedings against the plaintiff. *See*, <u>Louisiana Debating and Literary Association v. City of New Orleans</u>, 42 F.3d 1483 (5th Cir. 1995)(no ongoing state proceedings when plaintiff is notified of administrative complaint of discrimination filed with Human Rights Commission); *and* <u>Telco Communication, Inc. v. Carbaugh</u>, 885 F.2d 1225 (4th Cir. 1989)(no ongoing state administrative proceeding merely because state agency initiated contact with putative plaintiff). Nor do we believe the plaintiff's response to the Department's letters and subsequent request for a "reviewability determination" amounted to a "letter of intent" as prescribed by the CON statutes. The plaintiff's letter was a voluntary request for a preliminary determination whether its project fell within the purview of the CON statutes. Once the Department notified the plaintiff that its proposal was reviewable, the plaintiff was free to change its plans in order to fall outside the CON regulations, or to file a letter of intent and formal application and proceed as planned, or to file this action in federal court. *See*, <u>Alleghany Corp. v. Haase</u>, 896 F.2d 1046, 1050-51 (7th Cir. 1990), vacated as moot, 499 U.S. 933, 111 S.Ct. 1383, 113 L.Ed.2d 441 (1991)(§ 1983 plaintiff may initiate action to enjoin unconstitutional state conduct if he has not violated state law, has not exposed himself to a state enforcement proceeding, and is not a defendant in such a proceeding, but merely seeks to sweep away an illegal obstacle to his activities).

In any event, even if the transaction between the Department and the plaintiff were properly characterized as ongoing proceedings, such were not "judicial in nature." <u>Middlesex</u>, 457 U.S. at 432, 102 S.Ct. at 2521. "A judicial inquiry investigates,

declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist." McCartney, 896 F.2d at 1143 (8th Cir. 1990)(citing New Orleans Public Service, Inc. v. Council of City of New Orleans, 491 U.S. 350, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989)). Here, there was no application pending before the Department. It conducted no investigation, held no hearings, received no evidence, kept no record, and enforced no liabilities. Rather, it merely declared that the plaintiff's project reviewable.

In sum, we conclude the district court's refusal to abstain was not an abuse of discretion. We do not hold, however, that a defendant in a civil or administrative proceeding can arbitrarily sidetrack that proceeding by resorting to a § 1983 action in federal court. Rather, we merely find, on the facts of this case, there were no ongoing proceedings, judicial in nature, which would require abstention by the district court.[3]

IV.

---

[3]Although we do not decide the issue here today, at some point, the CON process may become sufficiently coercive and ongoing and judicial in nature so as to require abstention by the federal courts. For example, once the "formal review" of an accepted application is underway, the argument in favor of abstention becomes much more persuasive. *See, e.g.*, Alleghany Corp. v. McCartney, 896 F.2d 1138 (8th Cir. 1990)(abstention proper where plaintiff sought federal relief from administrative body's denial of application rather than seeking judicial review in state court); *and* Women's Community Health Center v. Texas Health Facilities Commission, 685 F.2d 974 (1982)(abstention proper where plaintiff sought federal declaratory and injunctive relief after denial of CON application but before exhausting state appeal process). Moreover, one who proceeds with his plans to begin a new service without first obtaining a required certificate of need does so at his own peril. The law makes a number of sanctions available to the Department for use against those who proceed without first obtaining a certificate where one is required. *See*, Iowa Code § 135.73.

-12-

Finally, we hold the district court did not err in concluding that by requiring the plaintiff to undergo the CON review process, the defendants would impose a substantial and unconstitutional burden on the right of access to abortion. We review the district court's findings of fact for clear error and its conclusions of law are reviewed *de novo*. Camberos v. Branstad, 73 F.3d 174, 176 (8th cir. 1995).

State action that has the purpose or effect of imposing a substantial obstacle in the path of a woman seeking an abortion before the fetus attains viability is an undue burden, and is unconstitutional. Planned Parenthood of Southeastern Pennsylvania v. Casey, 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992). As the Casey court explained, however:

> Numerous forms of state regulation might have the incidental effect of increasing the cost or decreasing the availability of medical care, whether for abortion or any other medical procedure. The fact that a law which serves a valid purpose, one not designed to strike at the right itself, has the incidental effect of making it more difficult or more expensive to procure an abortion cannot be enough to invalidate it. Only where state regulation imposes an undue burden on a woman's ability to make this decision does the power of the State reach into the heart of the liberty protected by the Due Process Clause.

Casey, 505 U.S. at 874, 112 S.Ct. at 2819. CON laws in general have been recognized as a valid means of furthering a legitimate state interest. *See*, Madarang v. Bermudes, 889 F.2d 251 (9th Cir. 1989)(recognizing importance of CON laws in furthering the state's legitimate interest in preventing the establishment of unneeded health care facilities); Women's Community Health Center v. Texas health Facilities Commission, 685 F.2d 974 (5th Cir. 1982)(recognizing importance of CON laws in insuring health care services are made available to all citizens in orderly economical

manner); *and* <u>Metropolitan Hospital v. Thornburgh</u>, 667 F.Supp 208 (E.D. Penn 1987)(CON is important in establishing orderly and economical distribution of health care resources). No one contends that Iowa's CON laws serve no legitimate state interest, or that Iowa has no legitimate interest in enforcing its CON laws. Indeed, there is little question that enforcement of the CON law is not unconstitutional if it merely has the incidental effect of making it more difficult or more expensive to procure an abortion and does not otherwise impose an undue burden on one's ability to obtain an abortion. <u>Casey</u>, 505 U.S. at 874, 112 S.Ct. at 2819.

There is no question but that the groups opposed to abortion have a perfect right to lobby in favor of subjecting PPI's proposed new facility to CON review. Our concern, however, chiefly lies in the state authorities' response to these lobbying efforts. In this case, although the district court did not expressly find that the defendant acted in bad faith, the record, the stipulated facts, and the additional findings of the court suggest that subjecting the plaintiff to review had the intended effect of impeding or preventing access to abortions. The district court found that because of the fundamental change in the manner of delivery of health care over the past several years, the provision of the CON statutes that excepted physician-controlled clinics from CON review were consistently interpreted to include those facilities like the plaintiff's which characterized the new mode of health care delivery. The testimony of both Nervig and Riggenburg revealed that the broad tests used by the Department in the past to determine whether a proposed clinic fell within the exception to reviewability would certainly have brought PPI's clinic within the exception. The plaintiff introduced evidence of specific clinics across Iowa that were structured similarly to its proposed project and which were exempted from CON review. The plaintiff also

introduced evidence of specific family planning clinics across Iowa which were structured similarly to its proposed project, and which provided essentially the same services, but not abortions, and which were exempted from CON review.  Moreover, Department officials could not explain the Department's deviation from its past practice of exempting similar clinics which did not offer pregnancy termination services to including the plaintiff's clinic which would offer such services.

In light of the facts and circumstances surrounding the Department's decision to apply the CON requirements to PPI, we can not say the district court clearly erred in finding the defendant would not have subjected the plaintiff to CON review if the plaintiff had not intended to provide pregnancy termination services. Where a requirement serves no purpose other than to make abortions more difficult, it strikes at the heart of a protected right, and is an unconstitutional burden on that right.  Casey 505 U.S. at 878, 112 S.Ct. at 2821.  Affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.